**Garrett SHELDON, on Behalf of himself and all others similarly situated, Plaintiff,**

v.

**The MOFFAT TUNNEL COMMISSION OF the STATE OF COLORADO, said board consisting of: Wilard L. BALL, (President), et al., Defendant.**

**Civ. A. No. C–3026.**

United States District Court, D. Colorado.

July 13, 1971.

**252**

Garrett Sheldon, pro se.

Rodney J. Bardwell, Jr., and Hart D. Gilchrist, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

Before McWILLIAMS, Circuit Judge, and ARRAJ and WINNER, District Judges.

ARRAJ, District Judge.

In his complaint plaintiff alleges that he is a qualified elector of the state of Colorado who owns no realty within the Moffat Tunnel Improvement District. Predicating jurisdiction upon 28 U.S.C. § 1343(3) (1962), he contends that portion of Colo.Rev.Stat.Ann. § 93–1–4(3) (1963) which disenfranchises otherwise eligible voters in elections for Moffat tunnel commissioners solely because they pay no property tax violates the equal protection clause of the fourteenth amendment. This three judge court was convened to consider his claim. 28 U.S. C. §§ 2281, 2284 (1965). The matter is before us on defendant's motion to dismiss; however, the disposition we now make obviates the necessity of ruling on that motion.

The portion of § 93–1–4(3) relevant to plaintiff's claim reads as follows:

> On the first Tuesday after the first Monday in November, 1964, at the general state election . . . an election shall be held . . . to elect [Moffat tunnel] commissioners. . . . [S]*uch election shall be conducted in accordance with the general election laws of the state; provided, that only qualified electors who have paid a tax on real estate* . . . in the year preceding the year in which any election is held *shall be allowed to vote at any general election* held under this article and that . . . a separate ballot and ballot box shall be furnished . . . for use by the voters in electing the [commissioners]. (Emphasis supplied).

Were this the only provision of conceivable applicability to Moffat tunnel election contests, plaintiff's claim undoubtedly would have raised a federal constitutional issue ripe for adjudication. *See* City of Phoenix, Ariz. v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). Consideration, however, must be given certain other Colorado election laws. In 1963 the General Assembly enacted the Colorado Election Code, Colo.Rev.Stat. Ann. § 49–1–1 et seq. (1963), to govern the conduct of all primary, special and general elections held in the state. Colo.Rev.Stat.Ann. § 49–1–2 (1963). The legislature directed that it be accorded a liberal construction "so that all legally qualified electors may be registered and permitted to vote . . . ." Colo.Rev.Stat.Ann. § 49–1–3 (1963). On the basis of the reference in § 93–1–4(3) to the "general election laws of the state"

and the provision directing that elections be held during the "general state election," it certainly can be argued that the Election Code was meant to establish guidelines for the selection of Moffat tunnel commissioners.

For one to become a "qualified elector" within the meaning of the Election Code, only three qualifications must be met: the prospective elector must be over twenty-one years of age, he must be a citizen of the United States, and he must meet state and local residency requirements. Colo.Rev.Stat.Ann. § 49–3–1 (1963, Supp.1965, Supp.1969). After an elector demonstrates those qualifications, the Election Code directs that he "shall" be registered and permitted to vote. *Id.* Under the Code a voter can be challenged only for failure to meet those requirements and cannot be disenfranchised because he has not paid a property or other *ad valorem* tax on real estate. Colo.Rev.Stat.Ann. § 49–13–4 (1963, Supp.1965). Moreover, the Code utilizes different phrases, "taxpaying elector" and "qualified taxpaying elector," Colo.Rev.Stat.Ann. § 49–1–4(6) (1963), to describe situations in which payment of a property tax is an additional qualification for voting. Those phrases are not used in connection with general elections. Thus, although § 93–1–4(3) purports to add payment of a property tax to the qualifications of voters in Moffat tunnel elections conducted during or after 1964, the provisions of the Election Code, read against the backdrop of a legislative policy of liberality, suggest that proviso no longer retains vitality. This view is bolstered by an examination of other Colorado election laws containing property tax qualifications. For example, the law governing issuance of bonds by local school districts makes no reference to the Election Code and does not mandate voter approval only at "general, primary and special elections." *See* Colo.Rev.Stat. Ann. § 123–11–1 et seq. (1963). Most of the other laws which contain an election plan for a specific state entity follow a similar pattern. The election de-

scribed by § 93–1–4 is, however, a significant exception, for no special provision was made by the General Assembly for Moffat tunnel elections. If the Election Code was intended to be the definitive pronouncement, notwithstanding the apparent conflict in § 93–1–4(3), plaintiff's complaint would pose no substantial federal constitutional issue. Rather, the claim before us would encompass no more than an assertion that Colorado would fail to conduct its next election in accord with its own election laws. We must concede the foregoing is not the sole plausible interpretation that can be made of Colorado's electoral scheme. As plaintiff argues, the General Assembly may have intended the proviso in § 93–1–4(3) to exclude from the polls all those who pay no property tax. If that construction is correct, the vitality of plaintiff's constitutional claim would remain unimpaired. Regardless of the proper statutory interpretation, it cannot be gainsaid that resolution of plaintiff's claim turns upon construction and interpretation of possibly conflicting and certainly unclear state statutes.

None of the statutory provisions crucial to the issue in this case have been construed by the Colorado Supreme Court. Beginning with its decision in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the United States Supreme Court has charted a course lower federal courts may follow in disposing of controversies marked by unclear or unsettled issues of state law. In one landmark decision, the Court stated, in language particularly relevant to plaintiff's claim:

Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions . . . . Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—

certainly for a federal court . . . . In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–641, 79 S.Ct. 455, 456–457, 3 L.Ed.2d 562 (1959).

By reaffirming its earlier pronouncements, the Court has made it clear in recent decisions that abstention is proper where "the issue of state law is uncertain," Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), and when an authoritative or limiting construction of the state statute by a state tribunal conceivably would avoid the necessity for a federal constitutional decision, Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L. Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L. Ed.2d 68 (1970), regardless of whether an attack also has been mounted against the statute on state constitutional grounds. Fornaris v. Ridge Tool Co., 400 U.S. 41, 43, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); compare Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) and Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960) with County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); see also Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Railroad Commission of Texas v. Pullman Co., supra; see generally, C. Wright, Law of Federal Courts § 52 (2d ed. 1970). We note, moreover, that a federal court may invoke the abstention doctrine without request by either party to the controversy. See Fornaris v. Ridge Tool Co., supra.

In the present case, an authoritative determination by the Colorado Supreme Court whether the Colorado Election Code provides the mandate for election of Moffat tunnel commissioners and precludes enforcement of the property tax payment proviso of § 93–1–4(3) could avoid the necessity of a federal constitutional decision and would serve the policy underlying the abstention doctrine of "avoid[ing] any possible irritant in the federal-state relationship." Reetz v. Bozanich, supra, 397 U.S. at 87, 90 S.Ct. at 790. Moreover, we hesitate to substitute our judgment for that of the Colorado Supreme Court, the body best equipped to decide the statutory issues posed, and so we conclude that abstention pending its decision is the most appropriate course. The delay occasioned by this accommodation to our federal system is, of course, unfortunate, but because the next election for Moffat tunnel commissioners will not be held until November, 1972, vindication of plaintiff's constitutional rights in the state courts of Colorado should present no insurmountable difficulty. See Wright v. Richter, 301 F.Supp. 1345 (D.Del.1969).

Therefore, we retain jurisdiction but abstain from acting at the present time and until plaintiff obtains a determination from the Colorado courts resolving the salient statutory issues, or until he demonstrates to us that securing the necessary ruling would unreasonably prejudice his rights in this action.

Ordered in accordance with the foregoing opinion.