## No. 27426

**Betty J. Chesser, Helen L. Coulter, Jim Jorgensen, individually, and for and on behalf of all other persons similarly situated v. Mary Estill Buchanan, Secretary of the State of Colorado; the Election Commission of the City and County of Denver, the Clerks and Recorders of the Counties of Adams, Boulder, Gilpin, Grand, Eagle, Jefferson, Moffat and Routt, State of Colorado and Moffat Tunnel Commission, Intervenor**

(568 P.2d 39)

Decided August 22, 1977.                    Rehearing denied September 12, 1977.

Victor F. Crepeau, H. William Huseby, for plaintiffs-appellants.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Mary A. Rashman, Assistant, Jeffrey G. Pearson, Assistant, for defendants-appellees, Mary Estill Buchanan, Secretary of State, State of Colorado; the Election Commission of the City and County of Denver; the Clerks and Recorders of the Counties of Adams, Boulder, Gilpin, Grand, Eagle, Moffat and Routt, State of Colorado.

Patrick R. Mahan, Cile Pace, for defendant-appellee, Clerk and Recorder of Jefferson County.

Charles W. Ennis, for Moffat Tunnel Commission.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Appellants are registered electors and residents of the Moffat Tunnel Improvement District. Because they did not pay tax on any real property within the district in 1975, they were not permitted to vote for district commissioners at the election in November, 1976. In a class action,

appellants sought a declaratory judgment that this statutory qualification to vote was repugnant to the Colorado election code and was unconstitutional as a denial of equal protection. The trial court rejected the appellants' contentions and entered a judgment dismissing their petition for a declaratory judgment. We affirm.

In 1922, the general assembly created the Moffat Tunnel Improvement District to promote the health, comfort, safety, convenience and welfare of the people of Colorado by providing a tunnel through the Continental Divide for communication and commerce between the eastern and western slopes of the Rocky Mountains. The general assembly declared that the tunnel would be "of especial benefit to the property within the boundaries of the improvement district." Section 32-8-101, C.R.S. 1973. A board of commissioners was designated to run the district and was authorized to construct and maintain the tunnel, contract and charge appropriate rent for its use, issue and retire bonds to finance the tunnel, exercise the power of eminent domain if necessary, hire necessary personnel, assess regular and special assessments from landowners, and invest funds in United States bonds. Sections 32-8-105, *et seq.*, C.R.S. 1973.

Two bond issues paid for construction of the tunnel which the board has leased to the Denver and Rio Grande Railroad and to the Denver Water Board. Whenever revenue from leasing is insufficient to pay for interest on the bonds, or to meet other district expenses, or to retire the bonds at maturity, the commissioners are authorized to assess real estate owners within the district in proportion to the benefits accrued to their real estate by reason of the tunnel. Sections 32-8-110 and 32-8-112, C.R.S. 1973. Unpaid assessments constitute a perpetual lien on the land, equivalent to a tax lien. Section 32-8-117, C.R.S. 1973. Since 1971, the board has made no special assessments.

The pertinent portion of Section 32-8-103(3), C.R.S. 1973 which provides for the election of the board of commissioners is as follows:
". . .[S]uch election shall be conducted in accordance with the general election laws of the state. Only qualified electors who have paid a tax on real estate in said district in the year preceding the year in which any election is held shall be allowed to vote at any general election held under this article. . ."

I.

The appellants argue on this appeal that the tax paying requirement is repugnant to and in conflict with the Colorado election code. They point out that age, citizenship, residency, and registration are the only requirements which are imposed by the election code. *See* sections 1-2-101 and 1-2-201, C.R.S. 1973. The appellants thus advocate their conclusion that the additional requirement for voting for board members as set forth in section 32-8-103(3) is invalid and should be considered as eliminated from the section.

■ Colorado's election code sets forth only the basic voter qualifications for all general, primary, and special elections. Section 1-1-101, *et seq.*, C.R.S. 1973. There is no statutory provision which states that in special purpose elections, such as we are concerned with here, an additional voter qualification cannot be imposed.

■ In section 32-8-103(3), the provision that only "qualified electors who have paid a tax on real estate in said district" shall be allowed to vote for members of the board, immediately follows the statement that such election shall be conducted in accordance with general election laws. It thus appears obvious that the legislative intent was that this special purpose election be conducted within the parameters of the normal electoral process and that because of the special nature of the district, this additional voter qualification would be imposed.

■ There is no conflict or inconsistency between the provisions of section 32-8-103(3) of the Moffat Tunnel Improvement District law and the election code.

## II.

■ Appellants also contend that the landowner classification no longer accurately distinguishes between those who are benefited and burdened by the district and those who are not. They allege that buyers and sellers outside the district benefit significantly and that land within the district is no longer specially burdened, since no assessments have been made since 1971. On this basis, the appellants urge us to find that the denial of their right to vote about a matter of interest to them deprives them of their constitutional right to the equal protection of the laws. Appellants argue that because their fundamental right to vote has been impaired, the proper standard of review is strict scrutiny and that a compelling state interest must be shown in order to justify depriving appellants of their right to vote for board members.

We reject petitioners' arguments and believe that *Salyer Land Co. v. Tulare Water Dist.*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), and its companion case *Associated Enterprises, Inc. v. Toltec Watershed Improvement Dist.*, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973) are dispositive. In these cases, the United States Supreme Court applied a "rational basis" standard in reviewing electoral qualification provisions which required voters in improvement districts to have paid taxes on real property within the districts. In both cases, it was held that the limitation of the franchise to landowners comported with equal protection requirements.

Normally, the strict scrutiny standard does apply to alleged deprivations of the right to vote. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) and *Jarmel v. Putnam*, 179 Colo. 215, 499 P.2d 603 (1972). However, the *Salyer* and *Associated Enterprises* cases carved out an exception to the general rule for special improvement

districts in which voters were required to have paid a tax on real property within the district. Two elements seem to be necessary to invoke this exception: (1) the improvement district must be of relatively limited authority and purpose and (2) the improvement district must have a disproportionate effect on landowners within the district.

The Moffat Tunnel Improvement District meets both requirements. While the board exercises a number of ordinary governmental powers, its use of those powers is limited to matters pertaining to the construction and operation of the tunnel. The district performs no general governmental services. Its purpose is limited to benefiting the state and the district by operating the tunnel to facilitate communication and commerce between the eastern and western slopes. The district has a greater effect on land within it than on land outside it and the value of land within the district undoubtedly increased because of construction of the tunnel. *See Milheim v. Moffat Tunnel Improvement Dist.*, 72 Colo. 268, 211 P. 649 (1922). Even more obvious is the burden which disproportionately affects land within the district. Should the management of the tunnel result in deficits, landowners within the district will be assessed in proportion to the benefit they have received, and the assessment becomes a lien on their land.[1] Thus, there exists a rational basis for limiting the franchise to tax paying electors within the district.

The judgment of the trial court is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

In my view restricting to taxpayers the right to vote for Moffat Tunnel Commissioners not only denies equal protection of the law as guaranteed against such state action by the Fourteenth Amendment, it also ignores the clear command of the Colorado constitution.

We deal here with one of the most basic rights accorded citizens in a republic, the right to vote. As Chief Justice Pringle wrote for this Court in *Jarmel v. Putnam*, 179 Colo. 215, 217, 499 P.2d 603, 604 (1972):

"[T]he right to vote is at the core of our constitutional system. . . . There must be no discrimination between citizens with respect to that right . . . except for a compelling state interest which cannot be protected in any other way. . . ."

---

[1] The financial provisions of the improvement districts in *Salyer* and *Associated Enterprises* resemble the provisions of the Moffat Tunnel Improvement District law. The districts in the *Salyer* and *Associate Enterprises* cases were financed with bonds and the use of the improvements were leased to provide income, but if deficits occurred, land within the districts would be assessed and liens would be imposed on the land.

*Jarmel* relied on the equal protection clause (U.S. Const. Amendment XIV) and the case of *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). While both *Jarmel* and *Dunn* involved durational residence requirements as conditions limiting the franchise, the broad language of *Jarmel* obviously applies to all forms of discrimination with respect to the right to vote. The majority opinion acknowledges that the rule of *Jarmel* and *Dunn* requiring "strict scrutiny" and applying the "compelling state interest" test, normally "does apply to alleged deprivations of the right to vote."

In my view there has been no showing of a "compelling state interest" to justify denying the vote in November, 1976 to residents of the district who are qualified electors but did not in 1975 pay taxes on real property located in the district.

The majority, however, would apply the "rational basis" standard of equal protection. Even if one applies the "rational basis" standard, however, the classification here must fail. The majority seek to distinguish those who paid realty taxes in 1975 as a permissible class on the ground that their lands might be assessed in the admittedly unlikely circumstance that the tunnel should produce a deficit. This analysis ignores the economic reality that any assessment of rental property is likely to be passed on by the owner of the property to the tenant. Thus, although the tenant may have paid no real property taxes, his leasehold (probably under a lease with the common provision for rent adjustments to reflect tax increases and special assessments) could certainly be burdened by a Moffat Tunnel assessment. Yet the tenant could not vote.

Moreover, the fact that one did not pay taxes on real property in the district in 1975 would not provide a "rational basis" for denying the right to vote in November, 1976. The taxes paid in 1975 would normally have been assessed for 1974. Thus ownership of real property in 1974 would be the practical prerequisite to voting in November, 1976. An elector who owned land in the district in 1974, paid taxes on it January 2, 1975, then immediately sold it, could vote, although none of the reasons cited by the majority for giving him the vote would have applied at the time of the election or for the preceding twenty-two months.

Conversely, one who purchased realty in the district on January 1, 1976, and thus neither directly nor indirectly (*e.g.*, through closing adjustments) paid any tax in 1975, could not vote. Yet at the time of the election, and during the ten previous months, such an elector would have met all the criteria set out by the majority opinion to justify allowing him or her to vote.

The statute under attack expressly requires that elections of Moffat Tunnel Commissioners "be conducted in accordance with the general election laws of the state." (Section 32-8-103(3), C.R.S. 1973). That seemingly clear command, which on its face would allow all qualified

electors in the district to vote, is followed immediately in the statute by the provision restricting the franchise to those who "paid a tax on real estate in said district in the year preceding the year in which any election is held . . . ." *Id.* This seeming conflict should be resolved in light of the *Jarmel* rule that statutes dealing with the franchise are to be liberally construed to protect the right to vote.[1]

Finally, and most troublesome, is the apparently direct contradiction between the statute in question and the Colorado Constitution. The constitution provides:

"*Qualifications of elector.* Every citizen of the United States who shall have attained the age of twenty-one years, shall have resided in this state not less than one year next preceding the election at which he offers to vote, and in the county, city, town, ward, or precinct such time as may be prescribed by law, and who shall have been duly registered as a voter if required by law, shall be qualified to vote at all elections; provided, that the general assembly may by law extend to citizens of the United States who have resided in this state less than one year, the right to vote for presidential and vice presidential electors." *Colo. Const.* Art. VII, Section 1.

This unambiguous language guarantees that those who meet the requirements of (1) citizenship, (2) age, (3) residence, and (4) registration, "shall be qualified to vote at all elections. . . ." Certainly there is no express or implied authority to add qualifications such as ownership of land or payment of realty taxes in the preceding year. Nevertheless the statute limits the vote to, "Only qualified electors who have paid a tax on real estate in said district" the prior year. (Section 32-8-103(3), C.R.S. 1973). The conflict is obvious.

While there may be elections — in essence private elections because they involve private or quasi-private property interests — in which property ownership may be added to the usual qualifications for voting, the instant case does not present one of them.

I am authorized to state that MR. JUSTICE GROVES joins in this dissent except the portion thereof relating to *Colo. Const.* Art. VII, Section 1.

---

[1]This proposed solution for the ambiguity in the statutory scheme is not without support. *See Sheldon v. Moffat Tunnel Commission,* 335 F.Supp. 251 (D. Colo. 1971) (Dictum by three-judge court consisting of Circuit Judge McWilliams, Chief Judge Arraj and Judge Winner).