No. 13874

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

JAMES H. SADLER,

Contestant and Appellant,

-vs-

THOMAS CONNOLLY,

Contestee and Respondent.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Connor and Boggs, Missoula, Montana
John P. Connor argued and Deirdre Boggs argued,
Missoula, Montana

For Respondent:

Tipp, Hoven and Skjelset, Missoula, Montana
Raymond P. Tipp argued, Missoula, Montana

---

Submitted:  January 19, 1978

Decided:  FEB 1 - 1978

Filed:  FEB 1 - 1978

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

This is an appeal from a judgment of ouster rendered in an election contest action, removing appellant Thomas Connolly, from the office of City Councilman for Ward 5, City of Missoula, Montana, and awarding the office to respondent, James H. Sadler.

Appellant Connolly a resident but/ not then an owner of real property in the city of Missoula, filed for the office of City Councilman, Ward 5, City of Missoula, on January 6, 1977. The filing consisted of filling out and signing, with acknowledgement before a notary public, a "Declaration of Nomination" form prescribed by the city, as required by section 23-3304, R.C.M. 1947. All candidates, including appellant, thereby attested:

> "I * * * [possess] the qualifications prescribed
> by the Constitution and laws of the State of
> Montana for the office herein named * * *."

The second page of the declaration contained questions designed to elicit information relevant to the candidate's satisfaction of the residency requirements under section 11-725, R.C.M. 1947. The information was accurately supplied by appellant. The form, in its entirety, contained no questions concerning property ownership.

Appellant, a Democratic candidate, was opposed in the April 5, 1977, Missoula general election by respondent, the Republican incumbent. Appellant won the election, receiving 722 votes to respondent's 569. Appellant assumed the duties of councilman on May 2, 1977. He has regularly discharged his duties since that date.

On April 21, 1977, respondent initiated the instant election contest action in the District Court, Missoula County, alleging as grounds appellant's lack of property ownership, contrary to sections 11-714 and 11-725, R.C.M. 1947, and his filing of a declaration of nomination which the complaint described as "false". The proper form and timeliness of the election contest actions is not disputed by appellant. Appellant answered and moved for judgment on the pleadings, supported by a brief which argued the unconstitutionality of the "freeholder" requirement under recent decisions of the United States Supreme Court, the United States District Court for the District of Montana, and various other federal and state court decisions. Appellant also gave formal notice to the Attorney General of the state of Montana that the constitutionality of sections 11-714 and 11-725 was being questioned.

A hearing was held on April 28, 1977. Additional briefs were subsequently submitted by the parties. On June 17, 1977, a judgment of ouster was rendered against appellant, which in effect awarded the office of Ward 5 Councilman to respondent.

In its findings of fact and conclusions of law accompanying the judgment, the district court found appellant unqualified for the office due to his lack of "freeholder" status. The District Court additionally concluded appellant swore falsely to his filed declaration of nomination, in that he stated he was "qualified under law" for office, when in fact he was not a "freeholder" as required by statute. Such false filing was found to be a violation of the Corrupt Practices Act, section 23-4758, R.C.M. 1947, and proper grounds for contest of nomination under section 23-4763(1), R.C.M. 1947, in that it was "* * * a deliberate, serious, and material violation of any provision of the law relating to nominations or elections."

Appellant moved for and was granted a hearing pursuant to his motion to amend the findings and judgment. No substantial amendment resulted from that hearing.

On June 29, 1977, this Court granted appellant a stay of execution of judgment, pending appeal.

The issues on appeal are:

(1) Are the "freeholder" requirements contained in sections 11-714 and 11-725, R.C.M. 1947, unconstitutional as being repugnant to the equal protection clause of the United States Constitution?

(2) Was the evidence adduced sufficient to support the conclusions of the District Court that appellant committed a "deliberate, serious, and material" violation of the election laws?

Issue (1). Appellant principally argues the unconstitutionality of the statutory "freeholder" requirements. Appellant maintains that he was qualified under law for office, and made no misrepresentation as to such status in his declaration of nomination.

Respondent contends the freeholder requirements of sections 11-714 and 11-725 are not unconstitutional under current federal and state case authority and, in any case, the constitutional question should be avoided because the case can be resolved on other grounds.

The United States Supreme Court considered the constitutionality of a freeholder requirement for school board membership in Turner (1970), v. Fouche,/396 U.S. 346, 90 S.Ct. 532, 24 L ed 2d 567, 581. In Turner the Court found it unnecessary to determine whether the Georgia freeholder requirement could withstand the strict scrutiny, or "compelling state interest", test stating:

"* * * it seems impossible to discern any interest the qualification can serve. It cannot be seriously urged that a citizen in all other respects qualified to sit on a school board must also own real property if he is to participate responsibly in educational decisions, without regard to whether he is a parent with children in the local schools, a lessee who effectively pays the property taxes of his lessor as part of his rent, or a state and federal taxpayer contributing to the approximately 85% of the Taliaferro County annual school budget derived from sources other than the board of education's own taxes on real property.

"Nor does the lack of ownership of realty establish a lack of attachment to the community * * *. However reasonable the assumption that those who own realty do possess such an attachment, Georgia may not rationally presume that that quality is necessarily wanting in all citizens of the county whose estates are less than freehold."

While the holding in Turner is limited to the factual context there, we find the reasoning persuasive for purposes of the instant determination.

A host of federal decisions specifically hold freeholder requirements for public office holding violative of equal protection, regardless of the standard employed in determining the constitutionality of such requirements. Davis v. Miller, (D.C.Md. 1972), 339 F.Supp. 498; Anderson v. City of Belle Glade, (S.D.Fla. 1971), 337 F.Supp. 1353; Connerton v. Oliver, (S.D.Tex. 1971), 333 F.Supp. 201.

An identical qualification, that of section 11-3215, R.C.M. 1947, requiring candidates for the office of city commissioner to own real estate within the municipality, was held unconstitutional on its face by the United States District Court for the District of Montana, in Warden v. City of Bozeman, Memorandum No. 2341, (D.C.Mont. Butte Division, 1973).

The freeholder requirements of sections 11-714 and 11-725 have no bearing on efficient functioning of the election process

or in promoting a candidate's ability, responsibility and interest in the office sought. We fail to see how payment of property taxes bears any conceivable relation to one's qualifications for city government and, should it do so, we take notice of the fact that, as a lessee, a nonfreeholder effectively pays the property taxes of his lessor by way of rent. As a United States taxpayer, he contributes to funds which ultimately return to the city in the form of revenue sharing and other federally funded programs.

Further, to prevent public representation by nonfreeholders is to restrict the field of candidates from which the voters can select. A substantial segment of the voting populace, i.e. nonfreeholders, may thereby be prevented from seeking full representation of their interests. Warden v. City of Bozeman, supra; Cf. Bullock v. Carter, (1972), 405 U.S. 134, 92 S.Ct. 849, 31 L ed 2d 92.

Appellant enjoys a "* * * federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications." Turner v. Fouche, 396 U.S. 362, 90 S.Ct. 541, 24 L ed 2d 580. We hold the freeholder requirements of sections 11-714 and 11-725, R.C.M. 1947, bear no relation whatsoever to a person's qualifications and ability to serve as city councilman, such that the result of the application of said requirements is one of invidious discrimination. As such, the above freeholder requirements are unconstitutional, as violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

In so holding we bear in mind this Court's recent decision in Burritt v. City of Butte, (1973), 161 Mont. 530, 508 P.2d 563.

In Burritt the plaintiff was a nonresident freeholder of property sought to be annexed by the City of Butte. Plaintiff attacked the constitutionality of the provision in section 11-403, R.C.M. 1947, which limits protests to annexation to "resident freeholders" in cities over 10,000 population, while in smaller cities, a protester need only be a "freeholder". This Court, in upholding the constitutional validity of the classification, recognized the compelling interests, both governmental and economic, in making the process of annexation easier in large cities. Such a case is clearly distinguishable from the instant case where no conceivable governmental interest can be discerned in the application of the freeholder requirement.

The inquiry remains, given the unconstitutionality of the freeholder requirements, whether appellant committed a "deliberate, serious, and material" violation of the election laws by swearing falsely to his filed declaration of nomination, specifically in regard to his nonfreeholder status. We hold he did not.

A legislative enactment declared unconstitutional is void. State ex rel. Schultz-Lindsay Const. Co. v.Bd. of Equalization, (1965), 145 Mont. 380, 403 P.2d 635; Billings Properties, Inc. v. Yellowstone County, (1964), 144 Mont. 25, 394 P.2d 182. As such, the enactment in legal contemplation is as inoperative as if it had never been passed. Judgments rendered before such an enactment is declared unconstitutional by the highest court of the state are therefore utterly void and not subject to collateral attack. Ex parte Anderson, (1950), 125 Mont. 331, 238 P.2d 910.

Issue (2). This issue concerns the sufficiency of the evidence to support the conclusion of the District Court that the appellant committed a "deliberate, serious and material"

violation of the election laws. As we have held the property ownership requirement unconstitutional, this issue merits only minor consideration. However, even assuming the constitutionality of the requirement, we are not convinced sufficient evidence was introduced establishing a violation of the Montana Corrupt Practices Act.

The Oregon Supreme Court has consistently held that a contestant has the burden of proving a violation of the Corrupt Practices Act by clear and convincing evidence. Thomas v. Penfold, (1975), 23 Ore. App. 168, 541 P.2d 1065; Putnam v. Milne,(1973);13 Ore. App. 540, 511 P.2d 442; Thornton v. Johnson, (1969), 253 Ore. 342, 453 P.2d 178. The underlying basis for such a standard is that an election contest under the Act, if successful, has the serious effect of disenfranchisement of the voters. Thornton v. Johnson, supra.

Respondent in this case sought to establish that appellant committed a "deliberate, serious, and material" violation of the election laws. The term "deliberate" plainly imports an intentional violation of the election laws; a violation made knowingly or, at the minimum, with conscious indifference. The record here, upon thorough review, discloses no evidence that appellant deliberately misrepresented his status regarding property ownership. In fact, there is substantial uncontradicted evidence that appellant did not know property ownership was a legal quali- fication of office. The declaration of nomination form, while containing various questions dealing with other relevant quali- fications for office, contains no questions designed to elicit information concerning property ownership. Thus, it is manifest that respondent failed to prove appellant deliberately violated the election laws.

The judgment of ouster rendered by the District Court is reversed and this cause is dismissed.

_____
Acting Chief Justice

We Concur:

_____

_____

_____
Justices.

- 9 -