NO.   94-499

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ELIZABETH J. JOHNSON,

      Contestant and Respondent,

   -vs-

CURTIS KILLINGSWORTH,

      Contestee and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kevin R. Callaghan; Harris, Callaghan & Velk,
          Missoula, Montana

          Alan F. Blakley, Attorney at Law, Missoula,
          Montana

      For Respondent:

          Richard R. Buley; Tipp & Buley, Missoula,
          Montana

FILED

APR 11 1995

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  January 19, 1995

Decided:  April 11, 1995

Justice Karla M. Gray delivered the Opinion of the Court.

Curtis Killingsworth (Killingsworth) appeals from the findings, conclusions, and judgment of the Fourth Judicial District Court, Missoula County, voiding his election as commissioner of Division 2 of the Missoula Irrigation District (District) Board. We affirm.

The facts of this case are undisputed. The District is comprised of five divisions and is governed by a board consisting of five commissioners, one elected from each division. Killingsworth ran unopposed for the commissioner position for Division 2 and was elected to that position on April 5, 1994. Killingsworth neither owns irrigable land nor resides within Division 2 of the District; he leases a storage unit within the District's boundaries.

Elizabeth Johnson (Johnson), who owns irrigable land within Division 2, petitioned to have Killingsworth's election set aside. She alleged that Killingsworth did not possess the statutory qualifications to be a commissioner because he did not own irrigable land within the division. Following a hearing on the petition, the District Court issued findings of fact, conclusions of law, and a judgment setting aside Killingsworth's election. Killingsworth appeals.

As a preliminary matter, Johnson has moved this Court to strike references to evidence contained, and argued, in Killingsworth's brief but not of record in this appeal. The

2

material consists of Killingsworth's summary of newspaper articles published after the District Court's judgment regarding possible public health problems posed by the Missoula irrigation system, an exhibit attached to a pretrial brief summarizing the annual cost to Missoula taxpayers for maintenance of the irrigation system, and Killingsworth's statements regarding the District's use of toxic chemicals and failure to allow him to erect barriers around an irrigation ditch.

It is axiomatic that this Court will not consider evidence not contained in the record on appeal. In re Marriage of Martin (1994), 265 Mont. 95, 100, 874 P.2d 1219, 1223. Moreover, a party's reference to evidence does not incorporate that evidence into the record. Marriage of Martin, 874 P.2d at 1223. We note that, although this evidence--including the subject matter later contained in the newspaper articles--generally was described to the District Court, it was never offered or received as evidence of record. Therefore, we grant Johnson's motion to strike and do not consider any of the challenged evidence or references thereto.

Irrigation districts are created, funded, and operated pursuant to statute. Sixty percent of the holders of title to irrigable lands sought to be included in a district may petition a district court to establish the district. Sections 85-7-101(1) and -104, MCA. If the court determines that the district should be established, it must divide the district into three, five, or seven divisions depending on the district's size. Section 85-7-107(3)(d), MCA. Each division is represented by a commissioner

3

possessing the qualifications set forth in § 85-7-1501, MCA. <u>See</u> § 85-7-107(3)(e), MCA. Pursuant to § 85-7-1501, MCA, "[a] person may not be a commissioner unless he is an owner of irrigable land within the division of the district he is to represent and is a resident of the county in which the division of the district or some portion of the division is situated." It is undisputed that Killingsworth is not an owner of irrigable land within Division 2 of the District.

Killingsworth contends that the land ownership requirement contained in § 85-7-1501, MCA, violates the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution. The District Court concluded that the ownership requirement was reasonably related to the state's interest regarding the efficient functioning of the District and, as a matter of law, did not violate the Equal Protection Clause. We review a district court's conclusion of law to determine whether it is correct. Associated Students v. City of Missoula (1993), 261 Mont. 231, 234, 862 P.2d 380, 382.

> Did the District Court err in applying the reasonable relationship standard to its equal protection analysis of the freeholder requirement contained in § 85-7-1501, MCA?

Killingsworth's first assertion of error is that the District Court erred in applying the reasonable relationship test to determine whether the statutory freeholder requirement in § 85-7-1501, MCA, violated his right to equal protection, He asserts that restrictions on candidate qualifications impact on citizens desiring to vote for that candidate and, as a result, that the

4

United States Supreme Court's voting rights cases applying the strict scrutiny test are controlling here.

Because voting rights cases involve a fundamental political right, the Supreme Court generally evaluates state legislation apportioning representation and regulating voter qualifications under the strict scrutiny standard. See Dunn v. Blumstein (1972), 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274, 284; Kramer v. Union School District (1969), 395 U.S. 621, 626-27, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583, 589; Reynolds v. Simms (1964), 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527. Under that standard, legislation is "unconstitutional unless the State can demonstrate that such laws are 'necessary to promote a compelling governmental interest."' Dunn, 405 U.S. at 342 (emphasis in original) (citation omitted).

As early as 1968, however, the Supreme Court recognized the possibility of an exception to the general rule requiring strict scrutiny in voting rights-related cases. In Avery v. Midland County (1968), 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, the Supreme Court observed that, while the Equal Protection Clause prohibits states from distinguishing between citizens on an arbitrary or invidious basis in regulating voter qualification or apportioning representation, it does not necessarily prohibit all such distinctions. Avery, 390 U.S. at 484. The Supreme Court recognized that, in the event of a special-purpose unit of government whose functions affect a distinct group of citizens more than other citizens, a state might be allowed to give greater

5

influence to those citizens most affected. Avery, 390 U.S. at 483-84. Subsequent to Avery, the Supreme Court determined that freeholder requirements used to prevent minorities from consideration for appointment to a general governmental board violated equal protection under any standard of scrutiny; it did not, however, "exclud[e] the possibility that other circumstances might present themselves in which a property qualification for office-holding could survive constitutional scrutiny." Turner v. Fouche (1970), 396 U.S. 346, 364, 90 S.Ct. 532, 542, 24 L.Ed.2d 567, 581.

Salyer Land Co. v. Tulare Water District (1973), 410 U.S. 719, 93 S.Ct 1224, 35 L.Ed.2d 659, presented the Supreme Court with the issue foreshadowed in Avery and Turner. The case involved a water storage district whose primary purpose was the acquisition, storage, and distribution of water for farming. Salver, 410 U.S. at 728. The costs of the district's projects were assessed against land in proportion to the benefits received and service charges were collectible from those receiving the benefit; in the event of delinquencies in payment for such services, the charges became a lien against the land. Salver, 410 U.S. at 729.

The plaintiff in Salver challenged the California statute limiting the right to vote for water district directors to landowners within the district on equal protection grounds. The Supreme Court observed that the water district had some governmental powers, but provided none of the general public services ordinarily attributed to a governing body; it also

determined that the economic burdens of the district's operations did not fall on residents per se, but affected primarily those residents who owned land within the district's boundaries. Salver, 410 U.S. at 728-29.

On the basis of the "special limited purpose and . . . the disproportionate effect of [the district's] activities on landowners as a group," the Supreme Court concluded that application of the strict scrutiny standard was inappropriate. Salver, 410 U.S. at 728. The Supreme Court held that the appropriate level of scrutiny for determining whether a statute limiting voting for water district directors to landowners within the district violated the equal protection clause was whether the voting limitation was reasonably related to the state's objectives. Salver, 410 U.S. at 730.

The Supreme Court confronted the issue again in Ball v. James (1981), 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150. The primary purpose of the district in Ball was "the storage, delivery, and conservation of water." Ball, 451 U.S. at 357. Like the district in Salver, financial responsibility for the Ball district primarily fell on subscribing landowners who were assessed on an acreage-proportionate basis with the assessment becoming a lien on the owners' land until paid; the Ball district differed from the district in Salver, however, in that it also raised revenue through the sale of hydroelectric power generated at the district's dams. Ball, 451 U.S. at 361-62.

In Ball, a class of registered voters who resided within the

7

district's boundaries, but who owned little or no land, challenged the voter qualification statute. They alleged that limiting the election of district directors to landowners, and apportioning those votes according to acreage, violated their right to equal protection. Ball, 451 U.S. at 357. The class argued that the district's ability to condemn land, levy taxes and sell electrical power to essentially half the population of Arizona, and its significant influence on environmental management within its boundaries, had a substantial effect on all residents within the district regardless of property ownership. Ball, 451 U.S. at 360.

The Supreme Court rejected this argument, relying on Salver. The Supreme Court determined that while the district included almost half of Arizona's population within its boundaries, supplied power to half the state and met its operating costs with revenue derived from its power generation, the differences between the Salver and Ball districts were not constitutionally significant. Ball, 451 U.S. at 365-66. The district did not exercise ordinary functions of general government such as the imposition of ad valorem property taxes or sales taxes, "the maintenance of streets, the operation of schools, or sanitation, health, or welfare services." Ball, 451 U.S. at 366. The district's water functions were limited to storage, conservation, and distribution of water based on land ownership. Ball, 451U.S. at 367. Finally, even the district's hydroelectric power functions were only incidental to the water functions which, as the parties had stipulated, was the primary function of the district. Ball, 451 U.S. at 368-69. Based

8

on the special, limited purpose of the district, the Supreme court determined that the appropriate standard of scrutiny was whether the voting requirement was reasonably related "to its statutory objectives." Ball, 451 U.S. at 371.

Similar to the districts in Salver and Ball, the establishment and functions of irrigation districts in Montana relate primarily to landowners and land within the district's boundaries. A district can be created only by petition of sixty percent of the title holders, in terms of both number and acreage, of irrigable land in a proposed district. Section 85-7-101(1), MCA. Moreover, the powers and duties of a district's board of commissioners are strictly limited by statute, with the commissioners being specifically authorized to:

> construct and maintain the necessary dams, reservoirs, and works for the collection and distribution of water for the district . . . and do any and every lawful act necessary to be done in order that sufficient water may be furnished for irrigation purposes to all the lands in the district . . . .

Section 85-7-1907, MCA. The entirety of the district's functions relate to the providing of irrigation water to lands in the district.

In addition, financial responsibility for an irrigation district's operations falls entirely on the landowners and lands within the district. Revenue for the operation of the district may be raised through bond issues or special taxes or assessments levied against the irrigable land within the district. Sections 85-7-2101 through -2104, MCA. Any special tax or assessment levied against the land becomes a lien against the land. Section 85-7-

2108, MCA.

Thus, like the water districts in Salver and Ball, Montana irrigation districts are special, limited-purpose units of government, the activities of which have a disproportionate effect on landowners within such districts as a group. As a result, it is appropriate to depart from the usual strict scrutiny applied to statutes impacting on a citizen's right to vote and analyze the freeholder requirement contained in § 85-7-1501, MCA, under the reasonable relationship standard.

In arguing for application of the strict scrutiny standard to the freeholder requirement at issue here, Killingsworth contends that this Court "wishe[d] to use" that standard in Sadler v. Connolly (1978), 175 Mont. 484, 575 P.2d 51. Whatever we may have "wished" to do, Sadler does not support application of the strict scrutiny standard in the case presently before us.

Sadler involved an election contest over a city council seat in which the district court ousted Sadler from the position because he did not meet the statutory freeholder qualification. Sadler appealed, contending that the freeholder qualification violated the equal protection clause of the United States Constitution. Sadler, 575 P.2d at 53. We found persuasive the Supreme Court's reasoning in Turner that it was unnecessary to determine whether the freeholder requirement could withstand strict scrutiny. Sadler, 575 P.2d at 53-54; citing Turner, 396 U.S. at 363-64. Indeed, we held that the freeholder requirement "bears no relation whatsoever" to a person's ability to serve as a city council member. Sadler,

10

575 P.2d at 54.  Nothing in Sadler supports application of the strict scrutiny standard here.

We conclude that, because of the District's narrow function and the disproportionate impact of its activities on landowners within its boundaries, the appropriate level of scrutiny is whether the freeholder qualification for commissioner bears a reasonable relationship to its statutory objectives.  We hold, therefore, that the District Court did not err in applying that standard in its equal protection analysis of the freeholder requirement contained in § 85-7-1501, MCA.

> Did the District Court err in concluding that the freeholder requirement contained in § 85-7-1501, MCA, bears a reasonable relationship to a legitimate state interest and, therefore, does not violate the Equal Protection Clause of the United States Constitution?

Killingsworth argues that the District court erred in concluding that the freeholder requirement is reasonably related to a legitimate state interest and, thus, passes scrutiny under the Equal Protection Clause.  He argues that the court failed to identify a legitimate interest to which the freeholder requirement is reasonably related.

While the District Court did not precisely articulate the "legitimate state interest" on which its decision was based, it did determine generally that the District commissioners' limited duties relate to the delivery of water to, and the raising of related revenues from, landowners within the District.  Under such circumstances, the District Court concluded that the freeholder requirement for commissioners contained in § 85-7-1501, MCA, was

11

reasonably related to the fair and efficient functioning of the District.  We agree.

In _Salver_ and _Ball_, the Supreme Court determined that statutes limiting voting for directors of those water districts to freeholders bore a reasonable relationship to a legitimate state interest.  It observed in both instances that the subscription of land necessary to create the districts may not have occurred if landowners were not guaranteed a dominant voice in the districts' control.  _Salver,_ 410 U.S. at 731; _Ball_, 451 U.S. at 371. In _Salver,_ the Supreme Court also noted that funding for that district was obtained solely from assessments against landowners. "Landowners  as a class were to bear the entire burden of the district's costs,  and the State could rationally conclude that they,  to the exclusion of residents,  should be charged with responsibility for its operation."  _Salver,_ 410 U.S. at 731.

Here, financial responsibility for the District falls solely on the landowners within the District as a class.  The District commissioners are authorized to assess taxes against the land and to issue bonds secured by the land within the District in order to finance the District's operations.  _See_ § 85-7-2101,  MCA. Moreover, it is not unreasonable for Montana to rationally conclude that landowners, who were required to pledge their land for the creation of the District and who remain financially responsible for its operation, should be given the responsibility for governing the District as commissioners.

Killingsworth contends that the state interest underlying the

12

statutory freeholder requirement for commissioners is not legitimate because lessees of property within the District--such as himself--are forced to bear the financial burden for the District's operation through rent payments. He argues that there is no distinction between a freeholder directly responsible for levies by the District and a renter who indirectly pays the levies as part of a rental payment. This argument is not persuasive.

In Salver, the Supreme Court addressed the status of lessees in an election scenario involving the freeholder status of voters. While recognizing that lessees had an interest analogous to landowners, it stated that, under the reasonable relationship level of scrutiny, the test was whether any reasonable factual scenario may be conceived which would allow California to deny the franchise to lessees while granting it to landowners. Salver, 410 U.S. at 732. The Supreme Court expressed concern that permitting short-term lessees to vote could lead to manipulation within the voting process by owners of large tracts of land creating short-term leases on behalf of loyal employees. Salver, 410 U.S. at 732. Landowners also might be less willing to subject their land to levies supporting the district if the long-term operations were subject to the influence of short-term lessees. Salver, 410 U.S. at 732. Moreover, administration of the register of voters could be difficult because leases need not be recorded. Under such circumstances, the Supreme Court determined that lessees reasonably could be denied the right to vote in elections for representation on a water district board. Salver, 410 U.S. at 733.

13

Here, the District was initiated by landowner petition pursuant to statutes which subjected the landowners' land to levies and the issuance of bonds to finance the District and ensured that only freeholders within the District could serve as commissioners. Sections 85-7-2101 and 85-7-1501, MCA. Killingsworth, on the other hand, does not own land within the District, but argues that his month-to-month leasehold interest in one storage unit located within the District should suffice in lieu of the statutory freeholder requirement. As in Salver, landowners certainly could be leery of subjecting the long-term operation and financial integrity of irrigation districts, in addition to the assessment of levies against their land, to the control of lessees with such tenuous relationships to the districts' purposes and functions. In order to foster creation and financing of the District via the necessary subscriptions of land, the State of Montana could reasonably decide that landowners would require a dominant voice in the management of the District. For this reason, it is not unreasonable for the State to achieve its goal by imposing a freeholder requirement for irrigation district commissioners. We need not further belabor the point related to landowner control over management of the District, except to note that Killingsworth's mere rental of one storage unit within the District does not qualify him to even participate in the election of the Division commissioner. See § 85-7-1710, MCA.

Killingsworth again asserts Sadler as support for his contention that freeholder requirements are unconstitutional

14

without regard to the nature of the governmental unit involved. As discussed briefly above, Sadler involved a candidate for election to the city council which is the general governing body of a municipality. On that basis alone, Sadler is factually distinguishable from the case before us involving a special, limited-purpose governmental entity serving none of the functions reserved for general governmental entities such as broad taxing authority, street maintenance, sanitation, health, or welfare services. As the Supreme Court noted in Ball, it is those functions which are characterized as "the sort of governmental powers that invoke the strict [one-person, one-vote] demands of Reynolds." Ball, 451 U.S. at 366.

Finally, we observe that Killingsworth does not cite to any case holding that voter or candidacy qualifications based on land ownership for special districts such as the District before us violate equal protection. Thus, we note only briefly that other jurisdictions have applied the Salyer rationale in upholding voter qualifications for special district elections against equal protection challenges. In Chesser v. Buchanan (Colo. 1977), 568 P.2d 39, for example, the Colorado Supreme Court rejected an equal protection challenge by electors and residents of a tunnel improvement district to a statute permitting only those who paid personal property taxes within the year preceding the election to vote for district commissioner. Because of the district's limited authority involving construction and operation of the tunnel, in addition to the assessment of costs against the landowners in

15

proportion to the benefits they received, the Colorado court concluded that "a rational basis [existed] for limiting the franchise to tax paying electors within the district." Chesser, 568 P.2d at 41. An Illinois appellate court reached the same result in Goldstein v. Mitchell (Ill.App.2 Dist. 1986), 494 N.E.2d 914. Since the district was created for the narrow purpose of managing erosion and flooding problems, and costs of the district were assessed against the land in proportion to benefits received and constituted a lien against the land, the court determined that the voting requirements were "adequately related" to the statutory goals. Goldstein, 494 N.E.2d at 921.

We conclude that the statutory freeholder qualification. for irrigation district commissioners, which provides landowners a dominant voice in the management of irrigation districts, is reasonably related to the legitimate state interest in creating and operating those districts in which the financial responsibility falls on the landowners within the district. Thus, we further conclude that the freeholder requirement contained in § 85-7-1501, MCA, does not violate Killingsworth's right to equal protection under the Fourteenth Amendment to the United States Constitution. We hold, therefore, that the District Court did not err in setting aside and voiding Killingsworth's election as commissioner of Division 2 of the Missoula Irrigation District Board.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

April 11, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Kevin R. Callaghan
HARRIS, CALLAGHAN & VELK
P.O. Box 7937
Missoula, MT 59807-7937

Alan F. Blakley
ATTORNEY AT LAW
218 East Front Street, Suite 200
Missoula MT 59807-7215

Richard R. Buley
TIPP & BULEY
P.O. Box 3778
Missoula, MT 59806-3778

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _Gallagher_
Deputy