No. 96-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

RITA H. CANNON,

       Petitioner and Appellant,

  and

DANIEL H. CANNON,

       Respondent and Respondent.

FILED

MAY -8 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Timothy J. Lape, Attorney at Law,
        Missoula, Montana

    For Respondent:

        John H. Gilliam, Skjelset & Gilliam,
        Missoula, Montana

Submitted on Briefs: April 3, 1997

Decided: May 8, 1997

Filed:

Justice Jim Regnier delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

On September 5, 1984, the Fourth Judicial District Court, Lake County, granted a decree of dissolution for the marriage of Rita and Daniel Cannon. The decree incorporated the parties' written agreement, signed in 1980, setting forth their respective rights and interests concerning real and personal property. The parties permanently separated in August 1990. On October 15, 1990, Rita filed a multi-count petition and complaint seeking to obtain a fair distribution of the assets acquired during the parties' marriage and relationship. The District Court bifurcated the issue of common law marriage and putative spouse and the remaining issues of constructive trust and fraud on the court. On June 16, 1994, the District Court entered its findings of fact, conclusions of law and order holding that Rita was neither a common law wife, nor putative spouse. The remaining issues were tried and the District Court granted a directed verdict against Rita at the close of her case on her claim of constructive trust. The District Court order filed on February 7, 1996, denied Rita's claim of fraud on the court. Rita appeals this order and the findings and conclusions filed on February 7, 1996, by the Twentieth Judicial District Court, Lake County. We affirm.

2

The issue on appeal is whether the District Court erred in its conclusion that the conduct alleged to constitute fraud upon the court did not rise to a legally recognizable action.

FACTUAL BACKGROUND

Rita Cannon is a Native American and an enrolled member of the Confederated Salish and Kootenai Tribes of the Flathead Reservation. Rita completed the eighth grade before dropping out of school in the ninth grade. Rita and Dan began living together in a common law marriage in April 1965. The parties had three children of their own, and from 1965 through 1984 they acquired a substantial amount of real and personal property.

In July 1974, Dan and Rita signed a separation agreement prepared by the law firm in which Keith McCurdy was a member. The terms of the agreement provided that Dan receive all of the real property (510 acres), all of the personal property in his possession (including all of the farm and ranch equipment and livestock), and sole custody of their three children, subject to reasonable rights of visitation and a thirty-day per year temporary custody right by Rita. Rita signed quitclaim deeds to the real property to Dan. Dan meanwhile signed over to Rita all of his interest in a jointly owned 1973 Dodge automobile.

The parties purchased an additional 150 acres for $120,000 in March 1980. Around this time, Dan went to see Keith McCurdy concerning the validity of the 1974 agreement. McCurdy drafted a new agreement which was signed by Dan and Rita on March 24, 1980. This agreement awarded Dan all the real property, all of the cattle, the farm machinery and

3

equipment, all checking and savings accounts in Dan's name, the hay, grain, and other farm produce, and all additions to or substitutions for the chattels. The agreement awarded Rita her automobile and checking account. The agreement further provided that in the event of Dan's demise, Rita would receive one-fourth of the net value of Dan's estate in lieu of her elective share, homestead allowance, exempt property, and family allowance. By the terms of the agreement, if Dan initiated dissolution proceedings Rita would receive one-fourth of the net value of Dan's assets, but if she initiated dissolution proceedings she would be entitled to only $10,000 as full satisfaction of all claims. McCurdy, who represented Dan concerning the 1980 agreement, did not allow the parties to sign the agreement the first time they met to review the document. McCurdy advised Rita to seek counsel and advised her that the agreement affected her rights.

From 1980 to 1984, Rita managed the Camas Bath House in Hot Springs, Montana, which was owned by the Confederated Salish and Kootenai Tribes. The Tribes initially paid for the heating oil for the bathhouse but informed Rita that they would no longer do so after the end of 1983. Rita did not have the funds to pay for the heating oil and therefore asked Dan to help her borrow money to purchase the heating oil, as all the property was in his name, and none in hers. Dan refused to help but suggested that Rita could get $10,000 by filing for a dissolution under the terms of the 1980 Agreement.

Rita went to Keith McCurdy to commence dissolution proceedings. McCurdy prepared the dissolution pleadings, including the petition, admission of service, and proposed

4

findings of fact, conclusions of law, and decree of dissolution. The petition for dissolution of marriage was signed by Rita on July 23, 1984, and Dan signed an admission of service and waiver that same day.

On September 5, 1984, McCurdy appeared with Rita before the Fourth Judicial District Court in a default dissolution proceeding. McCurdy's prepared proposed findings and conclusions included the statement that the real and personal property agreement of 1980, in which McCurdy represented Dan, was "fair, equitable and not unconscionable, and should be made a part of this Decree." The District Court granted the dissolution petition and signed the proposed findings and conclusions. After the dissolution hearing, Dan and Rita continued living together at their home in Hot Springs until August 1990 when they permanently separated. Thereafter, Rita filed a multi-count petition and complaint seeking to obtain a fair distribution of the assets acquired during the parties' marriage and relationship. Rita appeals from the findings of fact, conclusions of law, and order of the District Court entered on February 7, 1996, denying her claim of fraud on the court.

## DISCUSSION

Did the District Court err in its conclusion that the conduct alleged to constitute fraud upon the court did not rise to a legally recognizable action?

This Court reviews a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *In re Marriage of Miller* (1995), 273 Mont. 286, 291, 902 P.2d 1019, 1021; *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont.

5

459, 469, 898 P.2d 680, 686; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

Pursuant to Rule 60(b)(3), M.R.Civ.P., a party can seek relief from a judgment for fraud, either extrinsic or intrinsic. Relief under this provision, however, is only available if a motion is filed not more than sixty days after judgment. Rita's motion to modify the dissolution here was made approximately eight years after the decree was entered. Therefore she does not have an avenue of relief under this provision. However, Rule 60(b), M.R.Civ.P., contains a residual clause allowing a party to bring an independent action to reopen a judgment for fraud upon the court without time limitation. It provides:

> This rule does not limit the power of a court to entertain an independent action
> to relieve a party from a judgment, order, or proceeding, or to grant relief to
> a defendant not actually personally notified as may be required by law, or to
> set aside a judgment for fraud upon the court.

This Court has previously held that to support an independent action for fraud under this residual clause, the fraud must be extrinsic, not intrinsic. *Miller*, 902 P.2d at 1022; *Filler v. Richland County* (1991), 247 Mont. 285, 289, 806 P.2d 537, 539. Extrinsic fraud must be collateral to the matters tried by the court and may not include fraud in the matters upon which judgment was rendered. *Marriage of Miller*, 902 P.2d at 1023; *Salway v. Arkava* (1985), 215 Mont. 135, 140, 695 P.2d 1302, 1306.

Rita asserts that the District Court erred when it concluded that although the conduct by McCurdy was egregious, it did not rise to the level of conduct necessary to support a

6

legally recognizable cause of action for extrinsic fraud. The District Court, in its conclusion number three, specifically stated that

> [t]he conduct in this case was "egregious," but it does not rise to the level of "bribery of a judge or member of the jury; the fabrication of evidence in which an attorney has been implicated; or the employment of counsel to influence the court."

Rita asserts that this language employed by the District Court limits fraud upon the court to only consist of bribery, fabrication of evidence, or improper influence. Dan argues that the District Court's language derived from *Miller*, 902 P.2d 1019, only provided examples of the type of conduct which can rise to the level of fraud upon the court.

Therefore, this Court must examine the record to determine if the District Court correctly interpreted the law when it concluded that the conduct alleged to constitute fraud upon the court did not rise to a legally actionable level under Rule 60(b), M.R.Civ.P.

Rita specifically alleges that Keith McCurdy failed to deal candidly with the court, as he did not inform the court of his prior representation of Dan and of his involvement in creating the property agreement. She also asserts that McCurdy's actions constituted fraud upon the court because he did not inform the court of his alleged belief that the agreement was unfair and that he presented proposed findings of fact, and conclusions of law which stated that the agreement was fair, equitable, and not unconscionable.

It is clear that these actions do not fit within any of the examples of extrinsic fraud as provided in *Miller,* 902 P.2d 1019. Furthermore, even if the egregious conduct by McCurdy

7

constituted fraud, it was intrinsic to the case and not extrinsic. McCurdy's failure to inform the court of his belief that the agreement was not fair and his failure to introduce evidence of the parties' assets and liabilities are directly related to matters upon which judgment was rendered. This failure did not prevent a fair submission of the controversy, as McCurdy testified that he did not introduce this evidence because the parties had clearly agreed upon the distribution of their assets, and that once they had reached this agreement he considered it to be fair and equitable and not unconscionable for the parties. The District Court had the agreement before it and had Rita's own testimony regarding the petition and the agreement when it specifically incorporated the agreement into the decree.

In addition, this Court has held that false or fraudulent representations or concealments which are made during court proceedings are intrinsic and not extrinsic fraud and therefore are not grounds for reopening a judgment by an independent action. *Miller*, 902 P.2d at 1023; *State Compensation Ins. Fund v. Chapman* (1994), 267 Mont. 484, 490, 885 P.2d 407, 411. Therefore, even McCurdy's alleged failure to disclose his personal beliefs about the agreement does not rise to the level of extrinsic fraud, or fraud upon the court as is required to vacate a final judgment pursuant to the residual clause in Rule 60(b), M.R.Civ.P.

We therefore affirm the order by the Twentieth Judicial District Court.

_____
Justice

8

We Concur:

_____

_____
Karla M. Gray

_____
William E. Hunt Sr.

_____
Justices

9

Justice W. William Leaphart, dissenting.

I dissent. The District Court held that, although counsel's conduct in this case was egregious, it did not rise to the level of extrinsic fraud, i.e., bribery of a judge or member of the jury or the fabrication of evidence, or the employment of counsel to influence the court. In re Marriage of Miller (1995), 273 Mont. 286, 292, 902 P.2d 1019, 1022.

This Court agrees, holding that the alleged fraud is intrinsic to the case, not extrinsic. Although I find that it is not easy to neatly categorize acts of fraud as being intrinsic or extrinsic, this case, I believe, presents elements of both. I agree that counsel's failure to advise the court of his prior representation of Dan and of his involvement in creating the property agreement would constitute intrinsic, rather than extrinsic fraud.

However, the fact that the judicial process was used as a tool to lever Rita into accepting a measly $10,000 under the guise of a "divorce" is another matter. The whole "dissolution" proceeding was a sham on the court perpetrated for the sole purpose of denying Rita her fair share of the marital assets. She needed money to buy heating oil. Although there were sufficient marital assets to cover this expense or serve as security for a loan, Dan refused to give her the money. Instead he took advantage of her financial straits and levered her into filing for divorce so she would be restricted to an award of $10,000; the paltry sum which had been allotted to her under the property agreement *if* she filed dissolution proceedings. There was, in fact, no dissolution of the marital relationship. The parties continued living together in their home for another six years. Through the machinations of Dan and the assistance of counsel, the court unwittingly gave its stamp of approval to a

10

decree which allowed Dan to enjoy the best of both worlds. With decree in hand, Dan was able to continue his marital relationship with Rita without any further concern that she might lay claim to a fair share of their considerable marital assets.

Notwithstanding the fact that Rita was herself duped into participating in this ruse, the whole process was, nonetheless, an abuse of the judicial system for illegitimate purposes. When the court is deceived into allowing the judicial process to be used as a means to accomplish ulterior goals not contemplated by the law, that is collateral to the matter ostensibly tried to the court and, in my view, extrinsic fraud.

W. William Dougherty
Justice

11