No. 86-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

MONTANA TAVERN ASSOCIATION,
et al.,

        Plaintiffs and Respondents,

   -vs-

STATE OF MONTANA, acting by and
through the DEPARTMENT OF REVENUE,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael G. Garrity, Dept. of Revenue, Helena, Montana

    For Respondent:

        Philip W. Strope, Helena, Montana

---

Submitted on Briefs: Sept. 4, 1986

Decided: December 11, 1986

Filed: DEC 11 1986

*Ethel M. Harrison*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Department of Revenue, State of Montana, appeals the judgment of the District Court, Second Judicial District, Silver Bow County, enjoining the Department from enforcing its administrative rules to the detriment of the plaintiffs. We affirm the District Court for the reasons set forth below.

In 1984, this Court held electronic poker machines were illegal under the Montana Card Games Act. Gallatin County v. D & R Music & Vending (Mont. 1984), 676 P.2d 779, 41 St.Rep. 224. The 49th Legislature of the State of Montana passed H.B. 236, Ch. 720, Laws of 1985 the following year. This law, known as the Video Draw Poker Machine Control Law of 1985, §§ 23-5-601 through -615, MCA, legalized the operation of electronic video draw poker machines in the State of Montana. The effective date of the law was July 1, 1985.

Pursuant to its authority under § 23-5-605(2), MCA, the Department promulgated emergency administrative rules to become effective July 1, 1985. The Department certified the Notice of Adoption of Emergency Rules to the Secretary of State on June 17, 1985. The reason cited for adoption of the emergency rules was the insufficient time after the end of the 49th Legislative session in which to promulgate permanent rules. The Department further found that the lack of permanent rules between the effective date of the law and the adoption of permanent rules posed an imminent peril to public health, safety, and welfare, and also worked economic hardship on potential licensees and local governments.

On June 27, 1985, plaintiffs Montana Tavern Association and tavern owners Pavlovich, Keith, and Bullock, filed a

complaint seeking to enjoin the Department from enforcing certain of its emergency rules. Plaintiffs claimed the Video Draw Poker Machine Control Law authorized three categories of video draw poker machines: (1) all used video poker machines in operation before February 3, 1984; (2) new video poker machines meeting the description and specifications of § 23-5-606, MCA; and (3) used video poker machines in operation before February 3, 1984 meeting all the specifications of § 23-5-606 except subsections (4)(j), (4)(k), and (4)(o). Plaintiffs argued that the Department's emergency rules denied the owners of used video poker machines in category 1 the right to operate their machines. Plaintiffs claimed immediate and irreparable economic injury if they were not allowed to license their unmodified, used machines after July 1, 1985.

In its answer to the complaint, the Department responded that § 23-5-612(2), MCA, required all used video poker machines to meet the requirements of § 23-5-606 except subsections (4)(j), (4)(k), and (4)(o) as a condition precedent to licensure. The Department also argued that its emergency administrative rules complied with the provisions of the statute.

The same day the complaint was filed, the District Court granted a temporary restraining order against the Department, restraining it from enforcing those sections of the emergency rules which imposed the specifications of § 23-5-606, MCA, upon used video poker machines. The restraining order was to be in effect until a hearing was set on the issuance of a preliminary injunction.

A hearing on the preliminary injunction was held July 8, 1985. The District Court found that the Video Draw Poker

Machine Control Law was ambiguous, in that it could be construed to authorize three types of machines. The court also found that plaintiffs would be irreparably injured if they were not allowed to operate their unmodified, used machines, and that plaintiffs at that time were unable to buy the necessary modification kits. The court found the public health, welfare and safety would not be endangered by licensing these used machines, and granted plaintiffs' preliminary injunction.

The Department petitioned this Court for a writ of supervisory control, which was denied October 31, 1985. The District Court extended the preliminary injunction from November 7, 1985 until a final hearing in December, 1985. On February 3, 1986, the District Court entered its final judgment enjoining the Department from enforcing the Video Draw Poker Machine Control Law and its administrative rules in such a way as to deny plaintiffs the right to keep licenses for, and to maintain and operate, used video poker machines which were owned and operated in Montana before February 3, 1984.

The Department raises four issues on appeal:

(1) Whether the District Court properly issued the injunctions requiring the Department to license unmodified, used video poker machines?

(2) Whether the District Court erred in construing § 23-5-612(2), MCA?

(3) Whether the District Court erred in admitting evidence on legislative intent?

(4) Whether the District Court erred in ordering injunctive relief to persons who were not parties to the lawsuit?

- 4 -

The plaintiffs respond that the issues raised by the Department are moot, since the relief prayed for by the Department (dissolution of the District Court's injunction) has been available to the Department since June 30, 1986, within the terms of the District Court's judgment.[1] We find that the issues are not moot.

An issue is moot when, due to an event or passage of time, the issue has ceased to exist and no longer presents an actual controversy. State ex rel. Miller v. Murray (1979), 183 Mont. 499, 503, 600 P.2d 1174, 1176; Baker v. Bink (Mont. 1986), 726 P.2d 822, 823, 43 St.Rep. 1801, 1803. In the instant case, the Department was forced to license a total of 474 used video poker machines under the District Court's injunction. While most of the licenses for these used machines have expired, there are still 13 machines remaining whose licenses expire between November 7, 1986 and January 21, 1987. The District Court's judgment remains in effect as to these 13 machines until their present licenses expire. Thus an actual controversy exists as to the legitimacy of the licensure of these machines.

The first issue raised by the Department concerns whether the District Court properly issued its injunction.

---

1    The section of the judgment in question states:

This order will terminate and have no force and effect after June 30, 1986, except for used video draw poker machines previously licensed by the Defendants for twelve (12) month periods. For these machines this order will terminate and have no force and effect after the expiration of the twelve (12) month license period, but not before. However, the Defendants will have the option of terminating such licenses on June 30, 1986, providing they allow licensees credit for the unexpired portion of their license period on said machine on any new license issued for the year commencing July 1, 1986. No used video draw poker machines will be licensed for the first time nor relicensed for a

Under § 27-19-103(4) and (6), MCA, an injunction cannot be granted either to prevent the execution of a public statute by officers of the law or to prevent the exercise of a public office in a lawful manner. The Department argues the District Court's injunctions prevent the Department, its Director, and employees from enforcing the Video Draw Poker Machine Control Law. We must turn to the terms of the District Court's injunctions to determine whether those terms are inconsistent with the Video Draw Poker Machine Control Law thereby preventing the Department's enforcement of it. In reviewing the District Court's issuance of the injunctions, we will not interfere with the court's exercise of discretion unless there is a showing of manifest abuse of such discretion. Smith v. Ravalli Co. Bd. of Health (Mont. 1984), 679 P.2d 1249, 1251, 41 St.Rep. 716, 718; Erie v. State Highway Comm'n. (1969), 154 Mont. 150, 154, 461 P.2d 207, 209.

The District Court's first temporary restraining order set forth the license criteria to be used by the Department during the pendency of the order. The court ordered all used video poker machines to meet the following basic requirements in addition to all other provisions of the Video Draw Poker Machine Control Law, and the emergency administrative rules not in conflict with the restraining order. The license criteria were:

> (a) Licensee must be a person who has been granted a license under section 16-4-401(2), MCA, to sell alcoholic beverages for consumption on the premise [sic]. [See § 23-5-611, MCA.]

---

second period under the terms of this order after the date hereof, unless the used machine complies with the Defendants' administrative rules in effect upon application date.

(b) The used machine must be a machine that was owned and operated in the state on or prior to February 3, 1984. County or city tax receipts, county or city license receipts, bills of sale, security documents for conditional sales agreements, or such other kinds of proof of ownership as the Department of Revenue may authorize will be sufficient to establish ownership or operation of a used machine on or before February 3, 1984. [First sentence corresponds to § 23-5-602(4), MCA; proof of ownership was not described in the statutes or regulations--an applicant merely checked a box on the license application indicating ownership on or before February 3, 1984.]

(c) The machine must have an expected payback value of one credit played to be at least 80% of the value of the credit. [See § 23-5-607, MCA.]

(d) Each used machine must have an electronic device that the department may use to verify the winning percentage. [See § 23-5-607, MCA.]

(e) The licensee must pay to the state of Montana the license fee of $1,500 and such other and additional charges as the city or county in his home district may require. [See § 23-5-612(1)(b), MCA.]

(f) Each licensee licensed under the authority of this temporary restraining order must make his machines available for inspection by the Department of Revenue at any reasonable time. [See § 23-5-613, MCA.]

It is well settled in Montana that the purpose of a temporary restraining order is to preserve the status quo until a hearing can be held to determine whether an injunction should be granted. Boyer v. Karagacin (1978), 178 Mont. 26, 32, 582 P.2d 1173, 1177. None of the criteria set forth by the District Court change or contravene the Video Draw Poker Machine Control Law. If licensees meet the above requirements plus the requirements of the statutes and the non-conflicting portions of the administrative regulations, the Department is required to issue the license. Licensure is mandatory, not permissive, under § 23-5-612(1)(a), MCA. Thus the District Court's temporary restraining order did not

- 7 -

prevent the Department from executing its duties under the Video Draw Poker Machine Control Law.

The District Court's preliminary injunction reiterated the above criteria and continued to enjoin the Department from denying licenses to owners of used video poker machines which met the criteria. For the reasons stated above, we again hold that the preliminary injunction did not prevent the Department from executing its duties under the Video Draw Poker Machine Control Law.

The final judgment rendered February 3, 1986, enjoined the Department from enforcing the law in such a way as to deny plaintiffs the right to keep licenses which had been issued pursuant to the court's orders. The owners of these licenses were allowed to retain their licenses for a one year period from the date of licensure. The licenses could not be renewed, and new licenses for used video poker machines could not be issued for the first time under the terms of the court's order. Further, the court provided that its order would terminate after June 30, 1986. On that date, the Department was given the choice of terminating the licenses for the used machines and crediting those licensees for the unexpired portion of their licenses, or merely allowing the licenses to expire on their own. The Department has apparently chosen the second alternative--and the last of the licenses granted under the court's order will expire January 21, 1987.

We do not find any abuse of discretion in the District Court's final order. An injunction is an equitable remedy fashioned according to the circumstances of the case. Madison Fork Ranch v. L & B Lodge Pole Timber Products (Mont. 1980), 615 P.2d 900, 906, 37 St.Rep. 1468, 1474; Brown v.

Voss (Wash. 1986), 715 P.2d 514, 517. In this case, the Department adopted its emergency rules on June 27, to be effective July 1. The plaintiffs risked losing their used, unmodified machines on July 1 unless they could buy modification kits or new machines within three days. New kits were not available at that time. Their only remedy was to seek injunctive relief. Under these circumstances the District Court found that plaintiffs would suffer irreparable injury if they lost the use of the used, unmodified machines since the old machines would have to be abandoned or, alternatively, the owners would be forced to buy considerably more expensive new machines. The issuance of an injunction under these circumstances was not unreasonable. It was also proper for the court to structure the terms of the final order so as to protect the licensees and also limit the time for them to come into compliance with the new law.

The second issue concerns whether the District Court erred in construing § 23-5-612(2), MCA.[2] This subsection is a grandfather clause for used video poker machines, allowing their licensure until July 1, 1987. The Department argues the court either misconstrued the plain meaning of, or entirely disregarded, the provisions of § 23-5-612(2).

A general rule of statutory construction is that the intent of the legislature must first be determined from the

---

[2]     § 23-5-612(2). A used video draw poker machine may be licensed under subsection (1) without meeting the requirements of 23-5-606 (4)(j), (4)(k), and (4)(o) if the applicant for licensure can establish to the satisfaction of the department that, on the date of application, he owns or possesses a machine which was owned or operated in the state prior to February 3, 1984. A license issued under this subsection expires 1 year from the date of issuance or on July 1, 1987,

plain meaning of the words of the statute. Montana Ass'n. of Underwriters v. State, Dept. of Admin. (1977), 172 Mont. 211, 215, 563 P.2d 577, 579. Where the statute is ambiguous, a court will show deference to the interpretations given the statute by the agency charged with its administration. State Dept. of Highways v. Midland Materials (Mont. 1983), 662 P.2d 1322, 1325, 40 St.Rep. 666, 669. However, the agency's interpretation must be reasonable so as to avoid absurd results. Id. Further, where the legislative intent appears contrary to the agency's interpretation, a court may overturn the interpretation as an abuse of discretion. City of Billings v. Billings Firefighters Local No. 521 (1982), 200 Mont. 421, 431, 651 P.2d 627, 632.

We find, as did the District Court, that § 23-5-612(2) is susceptible to two meanings. "A used video draw poker machine may be licensed under subsection (1) without meeting the requirements of § 23-5-606(4)(j), (4)(k), and (4)(o) . . ." could mean either that all used machines may be licensed without meeting the requirements of (4)(j), (4)(k), and (4)(o), or that the used machines must meet all the requirements of § 23-5-606, MCA, except for (4)(j), (4)(k), and (4)(o). In light of this ambiguity, the court was required to look at the Department's interpretation of this subsection, and to uphold the interpretation if reasonable.

The Department interpreted § 23-5-612(2), MCA, to mean that all used video poker machines must meet all administrative rule specifications and the requirements of § 23-5-606, MCA, except (4)(j), (4)(k), and (4)(o). Rule III

whichever occurs first. (Subsection (2) terminates July 1, 1987--sec. 15, Ch. 720, L. 1985.)

- 10 -

(4)(a), Emergency Rules, 12 M.A.R. 805 (6/27/85). The result of this interpretation would have been to force all owners of used machines not meeting the above specifications to abandon or modify their machines within three days, since the effective date of the emergency rules was three days after their adoption. Even assuming owners were to try to modify the used machines in that time period, modification kits were not available in the marketplace at that time at a reasonable cost.[3] The District Court's rejection of the Department's interpretation of § 23-5-612(2) was proper, where an affirmance of that interpretation would lead to absurd results.

The Department also argues the court should not have admitted evidence of legislative intent, since the meaning of § 23-5-612(2), MCA, is clear on its face. As we stated above, § 23-5-612(2) is susceptible to two meanings, and in light of this ambiguity, the court was entitled to delve into the legislative history of the subsection in order to determine legislative intent. The evidence, consisting of a typed statement signed by members of the 49th Legislative Assembly and the oral testimony of two state representatives, was properly admitted where legislative intent could not be determined from the words of the statute. A reviewing court is not required to rubber-stamp an administrative rule which is inconsistent with a statutory mandate or which frustrates legislative policy. Hi-Craft Clothing Co. v. N.L.R.B. (3rd Cir. 1981), 660 F.2d 910, 914.

---

3    Testimony of a bar owner at the July 8, 1985 hearing indicated that the only kit available within the next few weeks would cost $2,000, whereas in three or four months, the components could be purchased for $75.

The final issue raised by the Department is that the District Court exceeded its personal jurisdiction by granting injunctive relief to persons other than those specifically named as plaintiffs in the complaint. The Department argues that under the provisions of § 27-19-104, MCA, in an action for injunctive relief initiated by a public interest association, a complaint must set forth the names and addresses of the injured members of the association. The Department reads § 27-19-104, MCA, together with § 27-19-105, MCA, to mean that an injunction may only be binding upon parties whose names and addresses appear on the complaint.

We find no merit in this argument. The plaintiff Montana Tavern Association alleged in paragraph II of its complaint that it was a voluntary trade association representing persons holding liquor licenses in the State of Montana. The Department admitted this allegation in its answer. The Department will not now be heard to challenge the adequacy of plaintiff Montana Tavern Association's capacity. Under Rule 9(a), M.R.Civ.P., challenges to a party's authority to sue in a representative capacity must be done by specific negative averment, including such particulars as are peculiarly within the pleader's knowledge. The Department did not meet this requirement by admitting paragraph II of plaintiffs' complaint.

In the interests of judicial economy, it was within the District Court's equitable jurisdiction to grant temporary injunctive relief to the plaintiffs and others similarly situated where there were common subject matter, facts and issues. The scope of the injunctions was narrow--the preliminary injunction applied only to those liquor license owners who had owned and operated video poker machines before

- 12 -

February 3, 1984; the final order merely restrained the Department from revoking the licenses of those tavern owners. Additionally, the final order had a built-in termination clause which foreclosed the possibility of relicensing the unmodified machines. The District Court did not abuse its discretion in fashioning this equitable result.

We affirm the order of the District Court and order the parties to bear their own costs.

_____
John L. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 13 -