No.  95-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


MICHAEL E. HEISLER,

Petitioner and Appellant,

v.

HINES MOTOR COMPANY,

Employer,

STATE COMPENSATION INSURANCE FUND

Insurer/Defendant and Respondent.


APPEAL FROM:   Workers' Compensation Court
For the State of Montana
The Honorable Michael McCarter, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Lawrence A. Anderson, Great Falls, Montana

For Respondent:

Norman Clyde Peterson, Assistant Attorney General, Agency Legal
Services Bureau, Helena, Montana


Heard: January 16, 1997
Submitted: January 17, 1997
Decided:  April 24, 1997
Filed:


_____
Clerk
Justice William E. Hunt, Sr. delivered the Opinion of the Court.


Appellant Michael E. Heisler (Heisler) appeals the decision of the Workersþ
Compensation Court denying his motion for summary judgment on the issue of whether
he was constitutionally entitled to change his treating physician without the prior approval
of the State Compensation Insurance Fund (State Fund).  We reverse and remand.

## ISSUE

The dispositive issue presented on appeal is whether the Workersþ Compensation Court erred in denying Heislerþs motion for summary judgment on the question of whether he was constitutionally entitled to change his treating physician without the prior approval of the State Fund.

## FACTS

The facts in this case are not in dispute. On June 28, 1993, Heisler was injured in a work-related auto accident while employed by Hines Motor Supply Company of Great Falls. Hines Motor Supply Company was insured by the State Fund for purposes of workersþ compensation. Immediately after the accident, Heisler sought treatment at the emergency room at Columbus Hospital. Heisler also went to a convenient care clinic on July 10, 12, and 14, 1993, for treatment of his injury. On July 12, 1993, Heisler submitted a claim for compensation to the State Fund in which he named a Dr. Richard A. Nelson as his treating physician.

The State Fund believed that Heislerþs initial visits to a given doctor at the convenient care clinic constituted a choice of treating physician. The State Fund therefore contended that Heisler was attempting to change his existing choice of treating physician from the initial doctor to Dr. Nelson. Under ARM 24.29.1511, an injured claimant cannot change treating physicians without the prior approval of the State Fund. Since Heisler had not obtained its prior approval, the State Fund refused to pay any of the charges Heisler incurred from his visits to Dr. Nelson. Heisler then instituted this suit to compel payment of Dr. Nelsonþs expenses.

In the Workersþ Compensation Court, and now on appeal, Heisler contended that he was statutorily entitled to full freedom to choose his own physician pursuant to  33-22-111, MCA (1991). He further contended that this statute must take precedence over the conflicting administrative rule, thereby allowing him to change his treating physician without the State Fundþs approval. For its part, the State Fund contended that the administrative rule was clear and unequivocal and, pursuant to its terms, the Fund had no duty to pay for treatment from an unauthorized treating physician.

Based on his interpretation of the apparent conflict of laws, Heisler moved for summary judgment. The Workersþ Compensation Court denied the motion, concluding that  33-22-111, MCA (1991), did not conflict with ARM 24.29.1511 and, further, did not apply in Heislerþs case. Heisler then moved that a final judgment be entered on that basis. The Workersþ Compensation Court granted the motion and entered a final judgment. Heisler appeals the denial of his motion for summary judgment.

## STANDARD OF REVIEW

This Court's standard of review of a grant or denial of summary judgment is the same as that used by the trial court in ruling upon the motion for summary judgment. Malek v. Hankins (1996), 275 Mont. 97, 98, 911 P.2d 1127, 1128 (citing Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 907 P.2d 154). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Malek, 911 P.2d at 1128.

## DISCUSSION

Before addressing the merits of the case, we must dispose of certain collateral matters.

First, the State Fund takes exception to Heislerþs citation to excerpts from certain depositions in his brief. Relying on Johnson v. Killingsworth (1995), 271 Mont. 1, 894 P.2d 272, the State Fund contends that, in appealing this case, the parties must limit themselves to the "uncontested facts" contained in the pretrial order, which included no reference to the depositions in question. Johnson does not stand for the proposition advanced, however.

In Johnson, this Court declined to consider certain evidence offered on appeal which was not contained in the District Court record. In so doing, this Court stated that "[i]t is axiomatic that this Court will not consider evidence not contained in the record on appeal. Moreover, a partyþs reference to evidence does not incorporate that evidence into the record." Johnson, 894 P.2d at 273 (citations omitted). Johnson does not address whether this Courtþs consideration of the facts in a given case must be limited to the

scope of the pretrial order; it merely states that this Court will not consider evidence which is not part of the record. In the case at bar, the depositions referenced are part of the record transmitted from the Workersþ Compensation Court on appeal.

The State Fund presents no relevant authority to support its argument that this Courtþs review of the facts presented in the trial court must be limited to the uncontested facts in a pretrial order. A pretrial order serves to "prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order." King v. Zimmerman (1994), 266 Mont. 54, 66, 878 P.2d 895, 903 (citing Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342). It lists such facts as are uncontested, and if a party admits to a fact by allowing its inclusion as uncontested in a pretrial order, the party will not be allowed to raise that particular factual issue on appeal.

Whitehawk v. Clark (1989), 238 Mont. 14, 19, 776 P.2d 484, 487 (citing Morse v. Cremer (1982), 200 Mont. 71, 647 P.2d 358). The pretrial order, however, includes only such facts as are uncontested; it does not preclude a party from attempting to prove additional facts which remain in dispute. Nor does the pretrial order in and of itself limit the scope of this Courtþs review. On appeal, this Court may consider any evidence which is part of the record, Johnson, 894 P.2d at 273, even if it was not included in a pretrial order. Accordingly, if the depositions in question will facilitate our review we will consider them, just as we are free to consider the entirety of the record presented on appeal.

Second, the State Fund argues that this Court should decline to review the Workersþ Compensation Courtþs decision in this case because the matter is moot. This suit was filed to recover certain expenses incurred by Dr. Nelson, which the State Fund refused to pay because Heisler had not obtained the Fundþs prior approval before switching treating physicians. The State Fund notes that it has since authorized Dr. Nelson to be Heislerþs treating physician and paid all the medical bills at issue. It therefore contends that the issue presented is moot.

As the State Fund correctly notes, an issue is moot when it no longer presents a justiciable controversy, due to the occurrence of a given event or the passage of time. Montana Tavern Association v. State Department of Revenue (1986), 224 Mont. 258, 262, 729 P.2d 1310, 1313-14 (citations omitted). However, an issue will not be considered moot if it is "capable of repetition, yet evading review." School Dist. No. 4 v. Board of Personnel Appeals (1985), 214 Mont. 361, 364, 692 P.2d 1261, 1263. In order to prove that a given situation is capable of repetition, yet evading review, a party must show:

(1) the challenged action was in its duration too short to be fully litigated prior to the cessation or expiration of the action; and
(2) there was a reasonable expectation the same complaining party would be subjected to the same action again.

School Dist. No. 4, 692 P.2d at 1263 (citing Sosna v. Iowa (1975), 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532).

We agree with the Workersþ Compensation Courtþs conclusion that the issue raised in this case is not moot because the actions of the State Fund are capable of repetition, yet evading review. We note that the State Fund has not abandoned its contention that ARM 24.29.1511 gave it the absolute right to pre-approve a claimantþs change of treating physician. Therefore, should Heisler again change his treating physician without the prior approval of the State Fund, the Fund could again refuse to pay the expenses incurred. The action complained of is capable of repetition.

Moreover, the dispute would probably continue to evade review, because the State Fund could avoid resolution of the underlying problem by simply paying the disputed expenses after a suit was instituted, just as it did in this case. Therefore, the State Fundþs voluntary discontinuance of the action complained of was insufficient to render the issue moot. Because the action which prompted institution of this suit is capable of repetition, yet evading review, the State Fundþs payment of the disputed charges will not serve to moot the issue presented. Having determined that the issue in the case is not moot, we will review the substantive question presented.

Did the Workersþ Compensation Court err in denying Heislerþs motion for

summary judgment on the question of whether he was constitutionally entitled to change his treating physician without the prior approval of the State Fund?

This appeal stems from an apparent conflict of laws which existed as of the date of Heislerþs injury. In this case, as in all workersþ compensation cases, it is the law in effect on the date of the claimantþs injury which must be applied. Kraft v. Flathead Valley Labor & Contractors (1990), 243 Mont. 363, 367, 792 P.2d 1094, 1096 (citing Young Motor Company v. Division of Workers' Comp. (1985), 219 Mont. 1, 710 P.2d 58).

When Heisler was injured, 33-22-111, MCA (1991), provided in pertinent part:
[a]ll policies of disability insurance, including individual, group, and blanket policies, and all policies insuring the payment of compensation under the workersþ compensation act shall provide that the insured has full freedom of choice in the selection of any licensed physician . . . .
(Emphasis added.) However, ARM 24.29.1511, which although enabled in 1993 retroactively applied to Heislerþs claim, provided in pertinent part:
Selection of physician for claims arising before July 1, 1993. Although 33-22-111, MCA, provides freedom of choice in selection of a physician, workersþ compensation and occupational disease case law also recognizes that a worker must select a single physician who is responsible for the overall medical management of the workersþ condition. That physician is known as the treating physician. . . . A worker must obtain prior authorization before changing treating physician.
ARM 24.29.1511 (1993), enabled by 39-71-203, MCA (1993) (emphasis added). Therefore, Heisler was confronted by two apparently irreconcilable provisions of law: one which apparently granted him an absolute right to choose his own physician, the other which prohibited him from changing physicians without the prior approval of the State Fund.

While the Workersþ Compensation Court acknowledged the apparent conflict between 33-22-111, MCA (1991), and ARM 24.29.1511 (1993), it concluded that these provisions did not in fact conflict. The Workersþ Compensation Court cited 33-1-102(5), MCA (1991), which stated "[t]his code [Title 33, Insurance and Insurance Companies] does not apply to workersþ compensation insurance programs provided for in Title 39, chapter 71, parts 21 and 23, and related sections." Under the plain language of 33-1-102(5), MCA (1991), provisions in the insurance code (including 33-22-111, MCA (1991) which granted individuals full freedom of choice of physicians) did not apply to cases brought under workersþ compensation Plan 1 (Title 39, chapter 71, part 21, which set forth the law regarding self-insurers) or workersþ compensation Plan 3 (Title 39, chapter 71, part 23, which set forth the law regarding the State Fund). Since Heisler was covered by the State Fund under Plan 3, the Workersþ Compensation Court concluded that 33-22-111, MCA (1991), did not grant to him the right to choose his own physician.

On appeal, Heisler first argues that the Workersþ Compensation Court misinterpreted the relevant statutes. Upon review, we conclude that it did not. Section 33-22-111, MCA (1991), the statute which provided freedom to choose a physician, was included in Title 33, the Insurance and Insurance Companies code. Section 33-1-102(5), MCA (1991), stated that the provisions of Title 33 did not apply to workersþ compensation cases involving coverage provided by the State Fund. Heisler admittedly was covered by the State Fund. Therefore, the right to freely choose a physician was not extended to him or to others whose coverage was provided either by the State Fund or a self-insured company. Section 33-1-102(5), MCA (1991). This construction of the relevant statutory provisions was correct; indeed, it was the only interpretation possible given the plain language of the applicable statutes.

Heisler next argues that this interpretation of the statutes created an untenable equal protection problem. Heisler argues that the Workersþ Compensation Courtþs interpretation meant that the right to full freedom of choice of a physician was granted to certain injured workers who were covered by workersþ compensation, specifically those covered by Plan 2, private insurers (Title 39, chapter 71, part 22). At the same time, injured workers who happened to be covered by Plan 1 or Plan 3 were not accorded

this right. Heisler argues that this differentiation between similarly situated individuals violated his right to equal protection of the law.

Initially, the State responds by arguing that this Court should not address this issue because it was not raised in the trial court. The State notes this Courtþs long-standing policy against addressing on appeal any issues which were not raised below. See Grenz v. Fire and Casualty of Connecticut (1996), 924 P.2d 264, 267, 53 St.Rep. 898, 900 (citing Rasmussen v. Lee (1996), 276 Mont. 84, 916 P.2d 98; Fandrich v. Capital Ford Lincoln Mercury (1995), 272 Mont. 425, 901 P.2d 112). Since Heisler did not allege an equal-protection violation in his petition, the State argues that this Court should decline to hear his equal-protection allegation on appeal.

A review of the record, however, reveals that the equal protection issue was raised before the Workersþ Compensation Court. In responding to Heislerþs original petition, the State addressed the possible applicability of the equal protection clause of the Montana Constitution. Heisler then in turn addressed this issue in his reply. Since the issue of equal protection was argued in the Workersþ Compensation Court, it is not raised here for the first time on appeal.

Equal protection of the laws requires that all persons be treated alike under like circumstances. Billings Associated Plumbing, Heating and Cooling Contractors v. State Board of Plumbers (1979), 184 Mont. 249, 253, 602 P.2d 597, 600 (citing U.S.Const., Amend. XIV, section 1; Mont.Const., Art. II, section 4; Montana Land Title Assn. v. First American Title (1975), 167 Mont. 471, 539 P.2d 711). In reviewing equal protection challenges to workersþ compensation statutes, this Court has said:

the right to receive Workersþ Compensation benefits is not a fundamental right which would trigger a strict scrutiny analysis of equal protection. Nor does this [workersþ compensation] statute infringe upon the rights of a suspect class. When a right determined to be less than fundamental is infringed upon by classification, the test applied by this Court is the rational relationship test. That is, does a legitimate governmental objective bear some identifiable rational relationship to a discriminatory classification.

Stratemeyer v. Lincoln County (1993), 259 Mont. 147, 151, 855 P.2d 506, 509 (quoting Cottrill v. Cottrill Sodding Service (1987), 229 Mont. 40, 42, 744 P.2d 895, 897). In order to pass the "rational-relationship" or "rational-basis" test, a challenged legislative enactment "must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals." Lyng v. Automobile Workers (1988), 485 U.S. 360, 375, 108 S.Ct. 1184, 1194, 99 L.Ed.2d 380 (Justice Marshall, dissenting).

In addition, legislative enactments are presumed to be constitutional. Vainio v. Brookshire (1993), 258 Mont. 273, 277, 852 P.2d 596, 599; City of Helena v. Krautter (1993), 258 Mont. 361, 364, 852 P.2d 636, 639. The party challenging the legislative enactment bears the burden of proving its unconstitutionality beyond a reasonable doubt. Vainio, 852 P.2d at 599 (citing Romero v. J & J Tire (1989), 238 Mont. 146, 149, 777 P.2d 292, 294). If any doubt exists, it must be resolved in favor of the legislative enactment. GBN, Inc. v. Montana Department of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597 (citing Harper v. Greely (1988), 234 Mont. 259, 269, 763 P.2d 650, 656).

Heisler argues that 33-22-111, MCA (1991), and ARM 24.29.1511 (1993), taken together, discriminate against certain injured workers (specifically, those covered by Plan 1 or Plan 3 insurers). He therefore contends that persons under like circumstances (i.e., injured workers) are not treated alike (because some are given full freedom of choice of physicians and others are not). Heisler further argues that this discrimination should not be allowed because it is not rationally related to a legitimate governmental interest. See Stratemeyer, 855 P.2d at 509.

The State responds by conceding that Plan 2 injured workers are treated differently than Plan 1 and Plan 3 injured workers, in that Plan 2 workers are afforded the right to freely choose or change their treating physician but Plan 1 and Plan 3 workers are not. Nevertheless, the State presents three arguments in support of its contention that such differentiation is proper and constitutional.

A. Case law from other jurisdictions.

First, the State argues that other state courts have addressed the issue of equal

protection in the area of workersþ compensation and upheld statutes which have an effect similar to that of the Montana administrative rule mandating pre-approval of a change in treating physician. In support of this argument, the State discusses Burrgess v. Industrial Commission (Ill.App.1 Dist.1988), 523 N.E.2d 1029; Rivers v. Oregon Accident Insurance Fund (Or.App.1980), 610 P.2d 288; and Chiropractors for Justice v. State of Alaska (Alaska 1995), 895 P.2d 962. But neither Burrgess nor Rivers are strictly on point to the narrow issue presented in this case, and Chiropractors for Justice is distinguishable.

Burrgess involved a challenge to an Illinois statute which mandated that an injured worker obtain his or her employerþs consent before switching to a third treating physician. The statute, however, gave the injured worker two elective physician choices before the requirement of employer consent was triggered. Burrgess, 523 N.E.2d at 1033. While the Illinois Court of Appeals in Burrgess cursorily noted and dismissed the claimantþs equal protection challenge, nothing in the case or in the challenged statute (Ill.Rev.Stat.1985, ch.48, par.138.8(a)) indicated that the statute in question only applied to some injured workers but not to others. Therefore, Burrgess sheds no light on the question of whether a statutory scheme which does differentiate between similarly situated injured workers may violate a claimantþs right to equal protection of the law.

Similarly, neither Rivers nor Chiropractors for Justice involve statutes which differentiate between classes of injured workers on the basis of the insurance plan by which the worker is covered. In Rivers, the Oregon Court of Appeals reviewed a provision which allowed injured workers to choose their own physicians within the state of Oregon, but allowed the insurer to choose the physician if the injured worker received treatment outside the state of Oregon. Rivers, 610 P.2d at 289. The Oregon court determined that such a requirement did not violate the claimantþs right to equal protection, because it was rationally related to the legitimate governmental objective of ensuring that the Oregon Workersþ Compensation Board would have the legal authority to subpoena or otherwise compel the cooperation of the doctors whose services it investigated. Rivers, 610 P.2d at 290. In Rivers, the Oregon court reviewed an equal protection question quite different than the one faced by this Court today, and it justified the challenged provision on a rational basis which cannot apply in the case at bar. Rivers is therefore not on point.

In Chiropractors for Justice, the Alaska Supreme Court reviewed a statutory provision which required an injured worker to receive approval before exceeding the maximum number of allowable compensable medical treatments. But in this Alaska case, a group of health-care providers (specifically, chiropractors), and not an injured worker, asserted that the statute violated its right to equal protection of the law. In determining that the provision in question did not violate the chiropractorsþ right to equal protection, the Alaska court noted that the provision was rationally related to the legitimate government aim "to reduce costs by curbing perceived abuses [of the workersþ compensation system] through procedural safeguards. . . [and to] ensure that employers are liable only for reasonable and necessary medical costs." Chiropractors for Justice, 895 P.2d at 971. The State argues that Chiropractors for Justice is persuasive authority because the means (limitations on treatment) and the ultimate state goal (cost control) which were sanctioned in that case are identical to the means and state goal challenged in the case at bar. For reasons set forth in part "C," below, we determine that the goal advanced by the Alaska statute is not identical to the goal advanced by the Montana statute and, therefore, Chiropractors for Justice can and must be distinguished.

B. Effect of the challenged provision.

The State next argues that    33-22-111, MCA (1991), and ARM 24.29.1511 (1993), taken together, did not violate Heislerþs constitutional right to equal protection because the effect of the statute and regulation is not to prevent the injured worker from being treated by the physician of his or her choice but, rather, merely to limit the circumstances under which the State Fund must pay for such treatment. The State therefore argues that Heisler in fact retains his right to "full freedom of choice of physicians," but, should he choose to exercise that right in violation of ARM 24.29.1511(1993), the State Fund will not bear the cost. Such an argument in disingenuous at best.

Few, if any, injured workers are willing or able to bear the entire cost of treating their work-related injuries in exchange for the privilege of choosing their own physicians. When the State makes the payment of treatment costs contingent on its approval of the treating physician, it effectively removes the injured claimantþs right to freely choose the physician of his or her choice. The State cannot seriously argue otherwise, given that, as noted below, it cites the cost control achieved by limiting physician choice as the sole rational basis justifying the policy requiring physician preapproval.

## C. Equal protection challenge.

Lastly, and most significantly, the State argues that the admitted differentiation between injured workers caused by 33-22-111, MCA (1991), and ARM 24.29.1511 (1993), should pass constitutional muster because such disparate treatment is rationally related to the legitimate governmental goal of controlling workersþ compensation costs. The State contends that

[r]equiring as part of the [workersþ compensation] program that claimants in Heislerþs class obtain prior authorization before permitting a change in doctors is a rational means of addressing the legitimate objective of ensuring that all primary medical care is both reasonable and necessary.

In turn, ensuring that medical treatments meet the Stateþs criteria for "reasonable and necessary" serves to control and minimize the cost of a workable workersþ compensation program. The State argues that such a goal justifies treating Plan 1 and Plan 3 claimants differently from Plan 2 claimants.

In support of its contention that cost control justifies disparate treatment, the State cites Stratemeyer, where this Court reviewed a statutory provision which refused workersþ compensation benefits to a claimant suffering from a mental injury. This Court determined that the challenged provision did not violate the claimantþs right to equal protection of the law, in part because we determined that the differentiation between mental and physical injuries was rationally related to the legitimate governmental objective of controlling workersþ compensation costs. Stratemeyer, 855 P.2d at 511. Relying on Stratemeyer and Chiropractors for Justice, the State urges this Court to determine that the challenged statute and administrative rule do not violate the claimantþs right to equal protection of the law and must be upheld.

After review, we conclude that neither Stratemeyer nor Chiropractors for Justice should control the result in this case. While both cases cite cost-control as a legitimate reason for disparate treatment of injured workers, in neither case was cost-control the only justification for the challenged provisions. In contrast, the only justification given for treating certain injured workers differently than others in the case at bar is the possibility that such discrimination will assist the State in controlling workersþ compensation costs. Heisler argues that cost-control alone cannot justify discrimination. We agree. On this basis, both Stratemeyer and Chiropractors for Justice must be distinguished.

Cost-control alone cannot justify disparate treatment which violates an individualþs right to equal protection of the law. Discrimination, that is, offering services to some while excluding others for any arbitrary reason, will always result in lower costs. We do not, however, allow discrimination merely for the sake of fiscal health. As the Alaska court noted in Chiropractors for Justice,

the asserted goal of lowering insurance premiums can have no independent force in the stateþs attempt to meet its burden under the equal protection clause. Although reducing costs to taxpayers or consumers is a legitimate government goal in one sense, savings will always be achieved by excluding a class of persons from benefits they would otherwise receive. Such economizing is justifiable only when effected through independently legitimate distinctions.

Chiropractors for Justice, 895 P.2d at 971 (quoting Alaska Pacific Assurance Co. v. Brown (Alaska 1984), 687 P.2d 264, 272) (emphasis added). In finding the respective challenged provisions constitutional, this Court in Stratemeyer and the Alaska court in Chiropractors for Justice both determined that "independently legitimate distinctions" existed, beyond an arbitrary exclusion of some claimants, and that these "independently legitimate distinctions" justified disparate treatment.

In Chiropractors for Justice, the Alaska court determined that the requirement that treatment sessions numbering beyond the statutorily allowed maximum be pre-approved did not violate health-care providersþ right to equal protection. The court noted that such a requirement

[was] not designed to reduce costs by depriving a certain class of persons, e.g. chiropractors, of benefits they would otherwise receive. Rather, they are designed to reduce costs by curbing perceived abuses through procedural safeguards. Chiropractors may be paid for frequent treatments by adhering to the regulation and demonstrating that the treatments are reasonable and necessary. The purpose here was to ensure that employers are liable only for reasonable and necessary medical costs.

Chiropractors for Justice, 895 P.2d at 971.

In the case at bar, the precise effect of the Montana statute and administrative rule is "to reduce costs by depriving a certain class of persons of benefits they would otherwise receive." The regulation does not serve to ensure that the medical costs incurred are reasonable and necessary, because the relevant factor in cost control is the reasonableness of the medical services provided, not the identity of the provider. Limiting physician-choice does not address the reasonableness or necessity of a given treatment; it reduces costs solely by prohibiting Plan 1 or Plan 3 claimants from exercising a privilege granted to Plan 2 claimants.

In Stratemeyer, this Court acknowledged that control of workersþ compensation costs was a legitimate government interest, to which the exclusion of mental-injury claims was rationally related. However, mental-injury claims were not arbitrarily excluded simply because their exclusion reduced costs. This Court also noted that compensating injury claims which did not include a physical component would be problematic, in that it would be very difficult to prove or disprove that the injury complained of was causally related to the employment situation. Stratemeyer, 855 P.2d at 511 (citing Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 379, 546 P.2d 1055, 1057). Therefore, the policy against allowing mental- or stress-injury claims was rationally related to the legitimate governmental interest of maintaining a workable workersþ compensation system.

Furthermore, we note that Stratemeyer factually differed significantly from the case at bar. Stratemeyer distinguished between mental and physical injuries and held that only the latter were compensable under workersþ compensation. In the case at bar, identically injured workers receive disparate treatment based solely on which workersþ compensation plan insures them--a matter beyond the control of the average worker. This case is therefore more analogous to Cottrill, where one injured worker was treated differently than another, identically injured worker would be, based solely on where the claimant lived. In Cottrill, this Court found such a distinction to be arbitrary and noted that "[a] classification that is patently arbitrary and bears no rational relationship to a legitimate governmental interest offends equal protection of the laws." Cottrill, 744 P.2d at 897 (quoting Tipco Corp., Inc. v. City of Billings (1982), 197 Mont. 339, 346, 642 P.2d 1074, 1078). Similarly, in this case, differentiating between injured workers based solely on which insurance plan covers them is an arbitrary distinction, not rationally related to the goal of controlling workersþ compensation costs.

In sum, we conclude that the policy of discriminating between injured workers based solely on which insurance plan covers them is not rationally related to a legitimate government objective. Having decided this case on the issue of equal protection, we need not address Heislerþs second argument that the statute in question violates his constitutional right to privacy. The decision of the Workersþ Compensation Court is reversed and this matter is remanded to the Workersþ Compensation Court for further proceedings consistent with this opinion.

/S/ WILLIAM E. HUNT, SR.


We Concur:

```
                  /S/  J. A.  TURNAGE
                   /S/  JIM REGNIER
                  /S/  JAMES C. NELSON
                 /S/  W. WILLIAM LEAPHART
                 /S/  TERRY N. TRIEWEILER
```

Justice Karla M. Gray, concurring and dissenting.


I concur in the Court's statutory analysis and in the result it reaches on the equal protection issue, although I would reach that result under a different analysis. In addition, I disagree with the overly broad conclusion on which the Court bases its equal protection holding.

I agree with the Court that Stratemeyer is distinguishable from the present case and that it does not support the State Fund's position here. I cannot agree, however, with the Court's sweeping conclusion that cost alone can never justify a classification or distinction in the workers' compensation arena. That conclusion, while not stated as such, results from the Court's agreement with Heisler's argument "that cost-control alone cannot justify discrimination" and the Court's statement that "[c]ost-control alone cannot justify disparate treatment which violates an individual's right to equal protection of the law." This latter statement by the Court is circuitous at best. It suggests that disparate treatment can actually violate equal protection prior to a determination of whether the disparate treatment is rationally related to a legitimate governmental objective or interest. This is simply not the case and the Court puts the cart before the horse in so stating.

In any event, however, it is my view that the Court's sweeping conclusion is incorrect and ill-advised. The entire workers' compensation system is premised on an economic compromise determined to be in the best interests of all concerned: employees gave up the right to sue employers in tort for work-related injuries in exchange for a guaranteed compensation system; employers avoided the potential of unlimited tort liabilities in exchange for required "no fault" compensation payments to injured workers. Indeed, the stated public policy objective of the Workers' Compensation Act is to provide wage-loss benefits to injured workers "at a reasonable cost to the employer." Section 39-71-105(1), MCA. Medical benefits, also to be provided without regard to fault, are based on "reasonableness" and "cost-effectiveness." Sections 39-71-105(1) and 39-71-704(a) and (b), MCA. Thus, to an extraordinary extent, the entire system is grounded in "cost control" of various kinds. The Court's conclusion that cost control can never justify disparate treatment eviscerates the purpose and provisions of the Act.

Moreover, resolution of the present case does not require a sweeping conclusion of the type made by the Court. Here, the State Fund's position is that operating an economical Plan Three system is a valid, legitimate governmental objective to which requiring prior authorization before changing treating physicians is reasonably related; stated differently, the State Fund contends that the prior authorization rule is a rational means of addressing the legitimate objective of ensuring that all primary medical care is both reasonable and necessary. The problem with that position is that the State Fund articulates no nexus between the prior authorization rule and the economic operation of Plan Three or the "reasonable and necessary medical care" objective. That is, the State Fund makes no showing of how the prior authorization rule actually achieves any cost control or cost reduction goals and I can conceive of none. Thus, while it is my view that cost control in its broadest sense--which may include a variety of considerations directed to maintaining, overall, a viable workers' compensation system to the ultimate benefit of both employees and employers--can constitute a legitimate governmental objective in the workers' compensation arena, I would conclude that no case has been made here that the prior authorization rule is rationally related to that objective. On that basis, I join the Court in holding that the prior authorization rule denies Heisler's right to equal protection of the laws.

                                    /S/  KARLA M. GRAY